**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

MICHELLE CARPENTER,
JAQUAY DAVIS,
REBEKAH MYATT HAMMONDS,
AMBER RUST, and
NANCI SELK,

      Plaintiffs,

v.

CELESTIAL SEASONINGS, INC., a Delaware corporation

      Defendant.

---

## CLASS ACTION COMPLAINT

---

1.     Plaintiffs Michelle Carpenter, Jaquay Davis, RebeKah Myatt Hammonds, Amber Rust, and Nanci Selk (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant Celestial Seasonings, Inc. ("Defendant") for its knowing, reckless, unfair, misleading, and/or intentional misrepresentation of the nature of the ingredients ("Misrepresentations"), specifically citric acid, in its "all-natural" herbal teas. These teas are sold throughout the United States and do not conform to their packaging. Plaintiffs seek monetary and equitable relief for themselves and on behalf of the proposed Classes (as defined herein). Plaintiffs' allegations are based upon personal knowledge as well as publicly available information and investigation by their counsel as to themselves, and as to all other matters, upon information and belief. Plaintiffs believe

that substantial evidentiary support exists for the allegations set forth herein and will be revealed after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2.      As it has for decades, Defendant manufactures, distributes, advertises, and sells a number of drinking teas. Currently, its tea products include herbal teas, Sleepytime tea, wellness teas, black teas, green teas, chai teas, and cold-brew iced teas. Defendant's specific products at issue in this case include Lemon Zinger Herbal Tea, Peach + Probiotics Herbal Tea, Country Peach Passion Herbal Tea, Jammin' Lemon Ginger Herbal Tea, and Wild Berry Zinger Herbal Tea (the "Teas").

3.      On the front label of each of the Teas, Defendant states that the Tea is "Naturally Flavored with Other Natural Flavors." The packaging also states that Defendant blends its "teas from the finest ingredients, with no artificial flavors or colors."

4.      These representations are false because the Teas contain citric acid, synthetically produced and not from natural sources, as a flavor.

5.      Defendant's Misrepresentations are intended to convey to consumers exactly what they say—that the Teas only contain natural flavors, not synthetic ones. Plaintiffs were deceived by the Misrepresentations and bring this action, on behalf of themselves and similarly situated individuals they represent, to remedy the results of Defendant's deceptive conduct.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over all causes of action asserted herein under 28 U.S.C. §1332(d) because the matter in controversy exceeds the sum or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class

resides in states other than the state in which Defendant is a citizen and in which this case is filed.

7.    The Court also has diversity jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(a) as the amount in controversy exceeds the sum or value of $75,000 and Plaintiffs and Defendant are citizens of different states.

8.    This Court has personal jurisdiction over Defendant because it conducts and transacts business throughout this District and the State of Colorado and it contracts to and does supply the Teas in this District and the State of Colorado. Defendant is responsible for the distribution, marketing, labeling, and sale of the Teas in this District, the State of Colorado, and throughout the United States. From its headquarters in this District in Colorado, Defendant markets the Teas and decides what it includes on the Teas' labels. Defendant has purposefully availed itself of the markets within Colorado through its advertising, marketing, and sale of the Teas. The Court also has specific jurisdiction over Defendant because it has intentionally directed activities toward Colorado and the claims asserted herein arise out of those activities, it is reasonable for Defendant to defend suit in this District because, by distributing and selling the Teas using the marketing and advertising developed and implemented in Colorado, Defendant caused harm to Plaintiffs and the Class/es that it knows is also likely to be suffered by Coloradans.

9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this District, and Defendant headquartered in this District.

## **THE PARTIES**

10.     Plaintiff Nanci Selk ("Plaintiff Selk") is, and at times relevant hereto was, a citizen of the State of Washington and a resident of Endicott, Washington. She purchased the Teas, including Lemon Zinger Herbal Tea, Jammin' Lemon Ginger Herbal Tea, and Wild Berry Zinger Herbal Tea, for household use.

11.     Plaintiff Selk purchased the Teas for herself from Amazon, Inc., online from her home in Endicott, Washington, from approximately 2021 until October 2024.

12.     Plaintiff Selk believed she was drinking tea that was all-natural and had no artificial flavoring. Prior to purchasing the Tea, Plaintiff Selk saw and relied upon the packaging of the Tea. During the time she purchased and drank the Tea, and due to the Misrepresentations by Defendant, she was unaware the Tea contained synthetic citric acid and would not have purchased the Tea if that information had been fully disclosed.

13.     Plaintiff Michelle Carpenter ("Plaintiff Carpenter") is, and at times relevant hereto was, a citizen of the State of Illinois and a resident of St. Charles, Illinois. She purchased the Teas, including Lemon Zinger, Jammin' Lemon Ginger, Country Peach Passion, and Wild Berry Zinger for household use. Plaintiff Carpenter purchased Wild Berry Zinger variety in 2024. Plaintiff Carpenter first purchased the Country Peach Passion variety beginning in 2020 and has purchased at least two boxes each summer since 2020. Upon moving to Illinois at the end of 2018, Plaintiff Carpenter has regularly stocked her pantry with both the Lemon Zinger and Jammin' Lemon Ginger varieties.

14.     Plaintiff Carpenter purchased the Tea from Jewel-Osco, Wal-Mart, and Target stores in St. Charles, Illinois.

15.    Plaintiff Carpenter believed she was drinking tea that has was all-natural and had no artificial flavoring. Prior to purchasing the Tea, Plaintiff Carpenter saw and relied upon the packaging of the Tea. During the time she purchased and drank the Tea, and due to the Misrepresentations by Defendant, she was unaware the Teas contained synthetic citric acid and would not have purchased the Tea if that information had been fully disclosed.

16.    Plaintiff Jaquay Davis ("Plaintiff Davis") is, and at times relevant hereto was, a citizen of the State of Illinois and a resident of Chicago, Illinois. She purchased the Teas, including Raspberry Zinger, Wild Berry Zinger, and Country Peach Passion for household use.

17.    Plaintiff Davis purchased the Tea from Wal-Mart and Dollar General in Chicago, Illinois from approximately 2004 to December 2025.

18.    Plaintiff Davis believed she was drinking tea that has was all-natural and had no artificial flavoring. Prior to purchasing the Tea, Plaintiff Davis saw and relied upon the packaging of the Tea. During the time she purchased and drank the Tea, and due to the Misrepresentations by Defendant, she was unaware the Teas contained synthetic citric acid and would not have purchased the Tea if that information had been fully disclosed.

19.    Plaintiff RebeKah Myatt Hammonds ("Plaintiff Hammonds") is, and at times relevant hereto was, a citizen of the State of New York and a resident of New York City, New York. She purchased the Tea, including Lemon Zinger and Raspberry Zinger for household use.

20.     Plaintiff Hammonds purchased the Tea from Target in New York City, New York from approximately December 2020 to December 2022.

21.     Plaintiff Hammonds believed she was drinking tea that was all-natural and had no artificial flavoring. Prior to purchasing the Tea, Plaintiff Hammonds saw and relied upon the packaging of the Tea. During the time she purchased and drank the Tea, and due to the Misrepresentations by Defendant, she was unaware the Tea contained synthetic citric acid and would not have purchased the Tea if that information had been fully disclosed.

22.     Plaintiff Amber Rust ("Plaintiff Rust") is, and at times relevant hereto was, a citizen of the State of Minnesota and a resident of Maplewood, Minnesota. She purchased the Tea, including Lemon Zinger, for household use.

23.     Plaintiff Rust purchased the Tea from Amazon, Hy-Vee, and Cub in and/or near Maplewood, Minnesota from approximately 2020 to January 2025.

24.     Plaintiff Rust believed she was drinking tea that has was all-natural and had no artificial flavoring. Prior to purchasing the Tea, Plaintiff Rust saw and relied upon the packaging of the Tea. During the time she purchased and drank the Teas, and due to the Misrepresentations by Defendant, she was unaware the Tea contained synthetic citric acid and would not have purchased the Tea if that information had been fully disclosed.

25.     As the result of Defendant's intentionally, recklessly, and/or knowingly deceptive, unfair, and misleading conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Teas that did not deliver what was promised by Defendant. Plaintiffs paid the purchase price on the reasonable assumptions that the packaging was accurate and the Teas did not contain any artificial flavors or

ingredients. Plaintiffs would not have paid this money had they known the truth about the Misrepresentations. Damages can be calculated through expert testimony at trial.

26.     Defendant Celestial Seasonings, Inc. is a Delaware corporation with its principal place of business in Boulder, Colorado, in Boulder County. Defendant has intentionally availed itself of the laws and markets of this District, and Defendant is subject to personal jurisdiction in this District. Celestial Seasonings, Inc. is a subsidiary of The Hain Celestial Group, Inc. The Hain Celestial Group, Inc. is publicly traded and had net sales of over $1.5 billion in 2025.

27.     Defendant, one of the largest producers of Tea in the country, has developed, manufactured, labeled, distributed, marketed, advertised, and sold the Teas under the Celestial Seasonings name throughout the United States, including in this District. It has done so continuously from at least January 2020, to present (the "Relevant Period"). Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Teas that misrepresented the type of citric acid used and the nature of ingredients in its Teas. Defendant is also responsible for sourcing ingredients, manufacturing the Teas, and conducting all relevant quality assurance protocols, including testing of both the ingredients and finished Teas.

28.     Plaintiffs relied upon the Teas' packaging and the material Misrepresentations, which were prepared, reviewed, and/or approved by Defendant and its agents at its headquarters in Colorado and disseminated by Defendant and its agents through the material Misrepresentations from the packaging. The Misrepresentations

were content that a reasonable consumer would consider important in purchasing the Teas.

## FACTUAL ALLEGATIONS

**I.    Defendant Promotes its Commitment to Quality Natural Products.**

29.    Defendant promotes itself as "the original herbal tea company," that, in 1969, began a "movement" to "shift towards healthier, happier little moments carved into ever-busier days."[1]

30.    Founded over fifty years ago, Celestial Seasonings aimed to "provide delicious, high quality teas that are good for [its] customers and good for the world."[2]

31.    Defendant touts its commitment to quality and sustainability as "Blended with Care: From Seed to Sip" and outlines its eight-step process "from the farmers' fields to your teacup."[3]

32.    "All" of the raw ingredients Defendant uses are "tested for purity and quality" and are "cleaned and milled in-house."[4]

33.    In addition to its packaging, Defendant states on its website: "In addition to natural herbs, teas, spices and botanicals, some of our teas use natural flavors to achieve their unique tastes. The natural flavors we use are derived from real ingredients and do not contain artificial or synthetic additives."[5]

---

[1] https://celestialseasonings.com/pages/learn-about-us, last visited December 13, 2025.
[2] https://celestialseasonings.com/pages/blended-with-care-from-seed-to-sip, last visited December 13, 2025.
[3] *Id.*
[4] *Id.*
[5] https://celestialseasonings.com/pages/frequently-asked-questions, last visited December 13, 2025.

34.    The Teas' labels contain statements that the Teas are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" and that they are blended "from the finest ingredients, with no artificial flavors or colors."

35.    True and correct images of the Lemon Zinger Herbal Tea labels appear below:





36.    True and correct images of Peach + Probiotics Herbal Tea labels appear below:





37.    True and correct images of Country Peach Passion Herbal Tea appear below:





38.    True and correct images of Jammin' Lemon Ginger Herbal Tea appear below:



39.    True and correct images of Wild Berry Zinger Herbal Tea appear below:



## II.    Defendant Knew or Should Have Known that the Citric Acid in its Teas was artificially manufactured.

40.    Each of the Teas lists "citric acid" on their ingredient panel.

41.    The Lemon Zinger Herbal Tea panel says: **Ingredients:** Hibiscus, Orange Peel, Roasted Chicory, Rosehips, Lemongrass, Lemon Peel, Natural Lemon Flavor with Other Natural Flavors, Citric Acid.

42.     The Peach + Probiotics Herbal Tea panel says: **Ingredients**: Orange Peel, Rosehips, Hawthorn, Chamomile, Natural Peach Flavor with Other Natural Flavors, Blackberry Leaves, Hibiscus, Bacillus Coagulans GBI-30 6086, Citric Acid.

43.     The Country Peach Passion Herbal Tea panel says: **Ingredients**: Orange Peel, Rosehips, Hawthorn, Chamomile, Natural Peach Flavor with Other Natural Flavors, Blackberry Leaves, Hibiscus, Dried Peaches, Citric Acid.

44.     The Jammin' Lemon Ginger Herbal Tea panel says: **Ingredients**: Ginger, Lemon Verbena, Lemongrass, Natural Lemon and Ginger Flavors with Other Natural Flavors, Rosehips, Roasted Chicory, Citric Acid, Lemon Powder.

45.     The Wild Berry Zinger Herbal Tea panel says: **Ingredients**: Hibiscus, Rosehips, Roasted Chicory, Orange Peel, Blackberry Leaves, Natural Flavors of Raspberries and Blueberries with Other Natural Flavors, Citric Acid.

46.     Naturally occurring citric acid exists in many fruits and vegetables.

47.     Manufactured citric acid ("MCA"), as opposed to the naturally occurring kind that exists in fruits and vegetables, is utilized extensively in food manufacturing. MCA is subject to significant chemical processing.[6]

48.     The vast majority of MCA (estimated 99%) is synthesized using mutant strain of a black mold *Aspergillus niger*.[7]

49.     The "Solvent extraction process for citric acid" requires the "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor" which allows the production of "food-grade citric acid in accordance with" specified conditions, including that "[t]he

---

[6] *See, e.g.,* https://pmc.ncbi.nlm.nih.gov/articles/PMC7178817/
[7] https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/

solvent used in the process consists of a mixture of *n-* octyl alcohol meeting the requirements of §172.864 of this chapter, synthetic isoparaffinic petroleum hydrocarbons meeting the requirements oof §172.882 of this chapter, and tridocecyl amine." 12 C.F.R. §173.280. The process uses chemical solvents (*n-* octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons) to extract the citric acid from the *Aspergillus niger* fermentation liquor and residue of the chemical solvents remains in "finished" MCA.

50.    MCA is an unnatural substance. Nearly all MCA begins with highly processed glucose from corn syrup derived from corn, with less from beet sugar, cane molasses, and fruit waste.[8]

51.    According to the FDA, MCA is not natural. The FDA has warned food manufacturers cannot advertise products as "100% Natural" or "All Natural" if they contain citric acid.

52.    The FDA has stated that citric acid is an artificial and synthetic additive in multiple warning letters to the food industry. *See, e.g.*, Warning Letter to Oak Tree Farm Dairy, Food & Drug Admin. (Aug. 16, 2001) (use of the phrase ''Nothing Artificial'' on a label was misleading to consumers "because [the food] contains citric acid"); Warning Letter to Hirzel Canning Co., Food & Drug Admin. (Aug. 29, 2001) ("[T]he addition of … citric acid to these products preclude the use of the term 'natural' to describe the product.''); Warning Letter to Fresh Express Inc., Food & Drug Admin. (Aug. 6, 2010) (citric acid on nutrition label without description of function is misbranding.).[9]

---

[8] *Id.*

[9] Copies of the August 16, 2001, August 29, 2001, and October 6, 2010 letters, pulled from the FDA website, are attached hereto as Exhibit A.

53.     Although in South America, Mexico, and Greece there still exist some factories where citric acid is isolated from unripe citrus fruits, today over 99 per cent of the world's output of citric acid is produced through artificial means.[10]

### III.     Defendant's Packaging Misled Reasonable Consumers Based on the Overall Impression and Material Misrepresentations

54.     Citric acid is an acidulant added to the Teas to enhance their tartness and not as a preservative. Defendant adds citric acid as a flavoring agent. As Defendant does not add citric acid to all varieties—if it did, that might indicate that citric acid served a preservative purpose, but it does not.

55.     The communications on the packaging of the Teas misled and deceived reasonable consumers because Defendant represents that the Teas contain *only* natural flavors.

56.     Based on the overall impression given by the packaging communications and Misrepresentations, no reasonable consumer could expect or understand that the citric acid in Defendant's Teas is synthetic.

57.     The Misrepresentations wrongly convey to consumers that Defendant's Teas are all-natural and have no artificial flavorings, which are qualities and characteristics the Teas do not actually possess.

58.     The Misrepresentations Defendant makes on the packaging of the Teas relating to including only natural flavors are material.

---

[10] Behera, B. C. (2020). Citric acid from *Aspergillus niger*: a comprehensive overview. *Critical Reviews in Microbiology*, *46*(6), 727–749. https://doi.org/10.1080/1040841X.2020.1828815

59.      Although the packaging of the Teas indicates that the Teas include only natural flavors, the ingredient panel lists "Citric Acid" as a separate ingredient. For example, the packaging for Lemon Zinger Herbal Tea states that it is "Naturally Flavored with Other Natural Flavors" and that contains "no artificial flavors." The Lemon Zinger Herbal Tea ingredient panel states that the tea consists of "Hibiscus, orange Peel, Roasted Chicory, Rosehips, Lemongrass, Lemon Peel, **Natural Lemon Flavor with Other Natural Flavors, Citric Acid,** Lemon Powder." (Emphasis supplied.) By listing citric acid separately from the "Other Natural Flavors," Defendant implies that the citric acid it adds to its Teas is not natural citric acid, but MCA.

60.      The packaging for each of the other Teas likewise contain the "Naturally Flavored" and "no artificial flavors" statements and separately list "Other Natural Flavors" and "citric acid," as ingredients.

61.      If the citric acid Defendant used in the Teas were natural citric acid and not MCA, there would be no reason to list "citric acid" as an ingredient in addition to "Other Natural Flavors."

62.      As an illustration, Defendant's Cinnamon Apple Spice Herbal Tea has on its packaging similar label claims that the tea is "Naturally Flavored with Other Natural Flavors" and that its ingredients include "no artificial flavors."





63.     The ingredient list for Cinnamon Apple Spice Herbal Tea, however, includes "Other Natural Flavors," *but not* citric acid.

64.     Bengal Spice Herbal Tea is labeled similarly to Cinnamon Apple Spice Herbal Tea, with promises of only "Natural Flavors" and "No Artificial Flavors," and containing no citric acid in the ingredients.





65.    Reasonable consumers must and do rely on Defendant to honestly report what its Teas contain.

66.    Plaintiffs relied on the Teas' packaging when making purchasing decisions.

67.    Plaintiffs' expectations and reliance are consistent with reasonable consumers.

68.    Defendant communicated regarding the quality of the Teas and its commitment to natural flavors and nutritious ingredients, when Defendant knew the Teas contained artificial flavor.

69.    Defendant had a duty to ensure the Teas were not deceptively, unfairly, misleadingly, and/or falsely marketed and all material information was properly and fully disclosed.

70.    Defendant acted knowingly, recklessly, and/or intentionally with its deceptive, unfair, and misleading packaging based on the material Misrepresentations.

71.    Defendant knew that properly and sufficiently disclosing the Teas' artificial ingredients was not only important, but also critical to many of its loyal customers.

72.    The Misrepresentations are material and reasonably likely to deceive reasonable consumers, such as Plaintiffs, in purchasing decisions. The materiality of the Misrepresentations is especially true considering the overall campaign by Defendant to advertise and market the Teas as made with natural, high-quality, healthy ingredients, "from Seed to Sip," and to induce consumers, such as Plaintiffs, to purchase the Teas.

73.    The Misrepresentations on the Teas' packaging is deceptive, unfair, and/or misleading. Reasonable consumers, like Plaintiffs, did and would consider the fact that Teas contain artificial flavors when considering whether and which tea to purchase.

74.    At all times during and throughout the Relevant Period, Defendant knew the citric acid it used in the Teas was for flavor and was not natural, while at the same time Defendant prominently represented that the Teas were "Naturally flavored with other natural flavors" and contained "no artificial flavors."

75.    Defendant's packaging was misleading due to Defendant's failure to disclose the true nature of the ingredients in the Teas.

76.    Defendant knew or should have known that reasonable consumers expected "Naturally flavored with other natural flavors" and "no artificial flavors" to mean that all flavors used would be natural and not synthetic.

77.    Defendant knew or should have known consumers paid premium prices as a result of the Misrepresentations.

78.    The Misrepresentations are material and render the Teas' packaging deceptive, unfair, and misleading.

79.    The Misrepresentations were intended to and did, in fact, cause consumers like Plaintiffs and the members of the Class, to purchase products they otherwise would not have, had they known the true nature and ingredients in the Teas.

80.    As a result of Defendant's deceptive, unfair, and misleading packaging of the Teas, Defendant generated substantial sales, which allowed Defendant to reap enormous profits from consumers who paid the purchase price or premium for the Teas that were not as advertised.

### PLAINTIFFS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANT

81.    Plaintiffs read and relied upon the packaging of the Teas when making their purchasing decisions. Had they known Defendant misrepresented that the Teas contained no artificial flavors, they would not have paid the purchase price of the Teas.

82.    Reasonable consumers consider a product's packaging when deciding whether to purchase it.

**PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASS**

83.    Defendant knew that reasonable consumers such as Plaintiffs and the proposed Class members would be the end purchasers of the Teas and the targets of its advertising, marketing, packaging, and statements.

84.    Defendant intended that the packaging would be considered by the end purchasers of Teas, including Plaintiffs and the proposed Class members.

85.    Defendant directly marketed to Plaintiffs and the proposed Classes through its packaging.

**APPLICABILITY OF EQUITABLE TOLLING AND
THE DISCOVERY RULE TO THE STATUTE OF LIMITATIONS**

86.    Fraudulent concealment and/or the discovery rule toll Plaintiffs' claims.

87.    The statute of limitations is tolled for all of Plaintiffs' statutory consumer protection and common law claims due to Defendant's fraudulent concealment of the fact that the Teas contained artificial flavoring ingredients. Defendant intentionally misrepresented these material facts to Plaintiffs.

88.    Defendant knew the Misrepresentations were a material consideration for any consumer buying the Teas.

89.    Defendant violated the relevant state consumer fraud acts by deceiving customers as to the true nature, quality, and makeup of the Teas.

90.    The discovery rule also protects Plaintiffs' claims.

91.    Plaintiffs could not reasonably discover that the Teas contained artificial citric acid without conducting their own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing.

92.     Plaintiffs did not know that the Teas contained MCA. Instead, Defendant only represented that the Teas were naturally flavored, contained no artificial flavorings, and are made of high-quality ingredients.

## CLASS ACTION ALLEGATIONS

93.     Plaintiffs bring this action individually and on behalf of the following classes pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> **Nationwide Class**: Under the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101 *et seq.*, all persons who, from January 8, 2022, to the present, purchased the Teas for household use, and not for resale (the "Class").

> **Illinois Subclass**: All persons who are citizens of Illinois who, from January 8, 2023, to the present, purchased the Teas for household use, and not for resale (the "Illinois Subclass").

> **Washington Subclass**: All persons who are citizens of Washington who, from January 8, 2022, to the present, purchased the Teas for household use, and not for resale (the "Washington Subclass").

> **Minnesota Subclass**: All persons who are citizens of Minnesota who, from January 8, 2020, to the present, purchased the Teas for household use, and not for resale (the "Minnesota Subclass").

> **New York Subclass**: All persons who are citizens of New York who, from January 8, 2023, to the present, purchased the Teas for household use, and not for resale (the "New York Subclass").

94.     Collectively, the Illinois, Washington, Minnesota, and New York Subclasses are referred to as the "State Subclasses."

95.     Excluded from the Class and State Subclasses (collectively, "Classes") are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal

representatives, employees, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

96.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

97.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

98.    Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

(a)    whether Defendant owed a duty of care;

(b)    whether Defendant knew or should have known that the Teas contained MCA;

(c)    whether the claims of Plaintiffs and the Classes serve a public benefit;

(d)    whether Defendant's packaging is false, deceptive, unfair, and misleading based on the Misrepresentations;

(e)    whether the Misrepresentations are material to a reasonable consumer;

(f)    whether the Misrepresentations are likely to deceive a reasonable consumer;

(g)    whether Defendant had knowledge that the Misrepresentations were material and false, deceptive, unfair, and/or misleading;

(h)    whether Defendant violated the Colorado Consumer Protection Act;

(i)    whether Defendant violated the laws of the State of Illinois;

(j)    whether Defendant violated the laws of the State of Washington;

(k)    whether Defendant violated the laws of the State of Minnesota;

(l)    whether Defendant violated the laws of the State of New York;

(m)    whether Defendant engaged in unfair trade practices;

(n)    whether Defendant engaged in false advertising;

(o)    whether Defendant made fraudulent misrepresentations;

(p)    whether Plaintiff and Class members' claims are tolled based on Defendant's fraudulent misrepresentations;

(q)    whether Plaintiffs and members of the Classes are entitled to actual, statutory, and punitive damages; and

(r)    whether Plaintiffs and members of the Classes are entitled to declaratory relief.

99.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved. Individual questions, if any, do not predominate in comparison to the numerous common questions that will guide the resolution of this action.

100.    Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

101.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

102.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

103.    Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

104.    As a result of the foregoing, class treatment is appropriate.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT I**</u>
**Violations of the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101 *et seq.***
**Against Defendant by All Plaintiffs on Behalf of the Nationwide Class**

105.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

106.    Defendant, Plaintiffs, and each Class member are "Persons" within the meaning of C.R.S.A. § 6-1-102(6).

107.    Plaintiffs and each Class member are actual or potential consumers of Defendant's Teas.

108.    Defendant knowingly or recklessly falsely represented that the Teas were flavored only with natural flavors and contained no artificial flavors when the Teas were flavored with MCA.

109.    Defendant's decisions about the ingredients used in the Teas and the representations made on the Teas' packaging emanated from its headquarters in Colorado.

110.    The ingredients used in the Teas are material to Plaintiffs and reasonable consumers deciding whether to purchase the Teas.

111.    Whether the Teas are flavored with "natural flavors," as opposed to artificial or synthetic flavors is material to Plaintiffs and reasonable consumers deciding whether to purchase the Teas.

112.    Defendant's conduct, as described, constitutes unfair or deceptive practices as defined by the Colorado Consumer Protection Act ("CCPA"), C.R.S.A. §6-1-105(1)(e).

113.    As a direct and proximate result of Defendant's unfair and deceptive conduct, Plaintiffs and each Class member have been injured.

114.    As a result of Defendant's unfair and deceptive conduct, Plaintiffs and each Class member have been damaged by paying a price premium for Teas which Defendant said contained only natural, and no artificial, flavors when the Teas contained MCA.

115.    Had Plaintiffs and each Class member known that the Teas contained MCA, contrary to the representations on the packaging, Plaintiffs and each Class member would (1) not have paid the price premium for the Teas; or (2) not have purchased the Teas at any price.

116.    As a result of the damages caused by Defendant's Misrepresentations, Plaintiffs and the Class are entitled to actual damages to be proved at trial, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT II
### Violations of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §505/1, *et seq.*, Against Defendant on Behalf of the Illinois Subclass

117.    Plaintiffs Carpenter and Davis incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

118.    Plaintiffs Carpenter and Davis and each Illinois Subclass member are "persons" within the meaning of 815 Ill. Comp. Stat. §505/1(c).

119.    Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. §505/1(c).

120.    The Teas are "merchandise" within the meaning of 815 Ill. Comp. Stat. §505/1(b).

121.    Plaintiffs Carpenter and Davis and each Illinois Subclass member's purchase of Defendant's Teas constituted a sale of merchandise within the meaning of 815 Ill. Comp. Stat. §505/1(d).

122.    The conduct described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.* ("ICFA").

123.    Defendant engaged in a deceptive, unfair, and misleading act or practice in violation of ICFA by knowingly misrepresenting the Teas' true quality, and nature of ingredients' manufacturing and the presence of artificial flavorings in the Teas.

124.    Defendant's deceptive acts and practices are continuing.

125.    Defendant intended for Plaintiffs Carpenter and Davis and the Illinois Subclass members to rely on and accept as true the Teas' packaging and Misrepresentations in deciding whether to purchase the Teas, and at what price.

126.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to deceive consumers with respect to the Teas' quality, ingredients, and presence of artificial flavorings.

127.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to cause consumers to purchase and/or overpay for the Teas.

128.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading acts occurred before Plaintiffs Carpenter and Davis and the Illinois Subclass decided to purchase the Teas.

129.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct did in fact deceive Plaintiffs Carpenter and Davis and the Illinois Subclass with respect to Teas' quality, ingredients, and presence of artificial flavorings.

130.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct did in fact deceive and cause Plaintiffs Carpenter and Davis and the Illinois Subclass to purchase and overpay for the Teas.

131.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

132.    The facts concealed or not fully disclosed by Defendant that the Teas contained artificial flavorings that do not conform to the packaging are material facts because Plaintiffs Carpenter and Davis, the Illinois Subclass, and any reasonable consumer would have considered those facts important in deciding whether to purchase the Teas, and at what price.

133.    If Plaintiffs Carpenter and Davis and the Illinois Subclass had known that the Teas contained artificial flavoring, they would not have paid the price premium they paid for the Teas.

134.    If Plaintiffs Carpenter and Davis and the Illinois Subclass had known that the Teas did not in fact match the quality and ingredients described above, they would not have purchased Teas at all.

135.    As a result of Defendant's conduct, Plaintiffs Carpenter and Davis and the Illinois Subclass members have suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavoring; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

136.    As a result of Defendant's conduct, Plaintiffs Carpenter and Davis and the Illinois Subclass have suffered actual damages, in that they purchased Teas that they would not have purchased at all if they had knowledge of the Misrepresentations.

137.    As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Plaintiffs Carpenter and Davis and the Illinois Subclass members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

138.    Defendant's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiffs Carpenter and Davis and the Illinois Subclass to an award of punitive damages.

**<u>COUNT III</u>**
**Violation of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.020, *et seq*., Against Defendant on Behalf of the Washington Subclass**

139.    Plaintiff Selk incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

140.    Plaintiff Selk, the Washington Subclass members, and Defendant are all "persons" as defined in the WCPA. Wash. Rev. Code § 19.86.010(1).

141.    Plaintiff Selk, the Washington Subclass members, and Defendant engaged in "commerce" as defined in the WCPA while marketing, offering for sale, selling, and purchasing the Tea in Washington and throughout the United States. Wash. Rev. Code § 19.86.010(2).

142.    The WCPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

143.    Defendant intentionally misrepresented and suppressed full disclosure of material facts regarding the presence of artificial flavoring in Teas.

144.    Defendant's misleading Misrepresentations concealed that the Teas' contained artificial citric acid as a flavoring. Defendant's Misrepresentations gives rise to a violation of the WCPA.

145.    Defendant Misrepresented this material information with the intent to induce consumers, such as Plaintiff Selk and the Washington Subclass, to purchase the Teas.

146.    Defendant engaged in deceptive, unfair, and misleading practices in the conduct of its trade or commerce.

147.    Defendant's deceptive, unfair, and misleading conduct, as alleged herein, is injurious to the public interest as it has the capacity to deceive a substantial part of the public and injure other persons.

148.    Defendant's deceptive, unfair, and misleading practices injured and continue to injure the public interest by misleading reasonable consumers into buying products they would not have purchased. These injuries greatly outweigh any potential countervailing benefit to consumers or competition. Defendant has no legally cognizable interest in misleading consumers regarding the nature and quality of ingredients in their Teas, a material fact that reasonable consumers consider when making purchasing decisions.

149.    As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Defendant is liable to Plaintiff Selk and the Washington Subclass in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Washington Revised Code section 19.86.090.

## COUNT IV
### Violation of Minnesota Unlawful Trade Practices Act, Minn. Stat. §325D.13, *et seq.*, Against Defendant on Behalf of the Minnesota Subclass

150.    Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

151.    Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices Act ("MUTPA").

152.    Defendant violated the MUTPA by knowingly making the Misrepresentations.

153.    Defendant knew or should have known the Teas were not of the true quality advertised because they contained artificial citric acid as a flavoring.

154.    Defendant's pattern of knowing Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiffs and the Minnesota Subclass with respect to the Teas' quality and ingredients.

155.    Defendant intended for Plaintiff Rust and the Minnesota Subclass to rely on its Misrepresentations, concealment, and/or deceptions regarding the Teas' quality and ingredients.

156.    Defendant's conduct and Misrepresentations described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

157.    The facts misrepresented, concealed, omitted, or not fully disclosed by Defendant were material facts in that Plaintiffs, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Teas. Had Plaintiffs and the Minnesota Subclass known the Teas did not have the quality advertised by Defendant, they would not have purchased Teas or paid the premium price.

158.    Defendant's unlawful conduct is ongoing and there is no indication that it intends to cease this fraudulent course of conduct.

159.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

160.    Pursuant to Minn. Stat. §8.31, subd. 3a, and § 325D.15, Plaintiffs and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and

any other just and proper relief available thereunder for Defendant's violations of the MUTPA.

## COUNT V
### Violations of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et seq.*, Against Defendant on Behalf of the Minnesota Subclass

161.   Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

162.   Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA").

163.   Defendant willingly engaged in deceptive trade practices, in violation of the MUDTPA, by failing to disclose the Misrepresentations.

164.   Defendant knew or should have known the Teas contained artificial citric acid as a flavoring.

165.   Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Rust and the Minnesota Subclass with respect to the Teas' ingredients, standards, quality, grade.

166.   Defendant intended that Plaintiff Rust and the Minnesota Subclass would rely on Defendant's Misrepresentations, concealment, implied warranties, and/or deceptions regarding the Teas' ingredients' standards, quality, and nature.

167.   Defendant's conduct and Misrepresentations described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

168.    The facts misrepresented, concealed, omitted, or not fully disclosed by Defendant were material facts in that Plaintiff Rust, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Teas. Had Plaintiffs and the Minnesota Subclass known the Teas did not have the quality advertised by Defendant, they would not have purchased the Teas.

169.    Defendant intended that Plaintiffs and the Minnesota Subclass would rely on Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct when purchasing the Teas, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

170.    Defendant's unlawful conduct is continuing, with no indication it intends to cease this fraudulent course of conduct.

171.    As a direct and proximate result of Defendant's conduct, Plaintiff Rust and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff Rust and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MUDTPA.

## <u>COUNT VI</u>
### Violations of Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67, *et. seq.*, Against Defendant on Behalf of the Minnesota Subclass

172.    Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

173. Plaintiff Rust and the Minnesota Subclass purchased "goods," specifically the Teas discussed herein, and are a "person" within the meaning of the False Statement in Advertising Act ("FSAA").

174. Plaintiff Rust and the Minnesota Subclass purchased the Teas because of the Misrepresentations asserted on the packaging that were made, published, disseminated, circulated, and placed before the public by Defendant.

175. By engaging in the conduct described herein, Defendant has and continues to violate Minn. Stat. § 325F.67.

176. Defendant's Misrepresentations and use of other deceptive, unfair, and misleading business practices include, by way of example, representations that the Teas were all-natural with no artificial flavorings.

177. Defendant knew or should have known Teas did not have the quality and ingredients described above because they included artificial citric acid as a flavoring.

178. The Misrepresentations were likely to deceive or cause misunderstanding and did in fact deceive Plaintiffs and the Minnesota Subclass with respect to the Teas' ingredients' standards, quality, and nature.

179. Defendant's conduct and Misrepresentations described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

180. The Misrepresentations were made to customers in Minnesota, including the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Teas contained artificial flavorings.

181.   The facts concealed, omitted, or not fully disclosed by Defendant were material facts in that Plaintiffs, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Teas. Had Plaintiffs and the Minnesota Subclass known the Teas did not have the quality as advertised by Defendant, they would not have purchased the Teas or paid the premium price.

182.   Defendant intended that Plaintiff Rust and the Minnesota Subclass would rely on the deception by purchasing the Teas, unaware of the Misrepresentations and other undisclosed material facts. This conduct constitutes consumer fraud.

183.   Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

184.   As a direct and proximate result of Defendant's conduct, Plaintiff Rust and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

185.   Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff Rust and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the FSAA.

## <u>COUNT VII</u>
### Violations of Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, *et. seq.*, Against Defendant on Behalf of the Minnesota Subclass

186.   Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

187.    The members of the Minnesota Subclass at times relevant hereto were citizens of the State of Minnesota.

188.    Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MPCFA").

189.    The Misrepresentations were made in connection with the sale of the Teas to Plaintiff Rust and the Minnesota Subclass.

190.    Defendant knowingly acted, used, and employed fraud, false pretenses, and deceptive, unfair, and misleading practices in connection with the sale of the Teas. Specifically, Defendant failed to disclose the Teas contained artificial flavorings.

191.    Defendant knew or should have known the Teas did not have the quality reasonable consumers expected because they included undisclosed artificial citric acid as a flavoring that does not conform to the packaging. Defendant intended for Plaintiff Rust and the Minnesota Subclass to rely on the Teas' packaging in deciding whether to purchase the Teas.

192.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Teas' quality and ingredients, and, by extension, the true value of the Tea. Plaintiff Rust and the Minnesota Subclass relied on, and were in fact deceived by, Defendant's Misrepresentations with respect to the Teas' quality and ingredients in deciding to purchase them over competitors' teas.

193.    The facts misrepresented, concealed, or not fully disclosed by Defendant were material facts in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Teas. Had Plaintiff Rust and the Minnesota Subclass known the Teas did not have the quality

advertised by Defendant, they would not have purchased the Teas or paid the premium price.

194.    Defendant's Misrepresentations were made to customers in Minnesota, including the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Teas contained artificial flavorings.

195.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

196.    As a direct and proximate result of Defendant's conduct, Plaintiff Rust and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

197.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff Rust and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MPCFA.

## <u>COUNT VIII</u>
**Violations of New York's Deceptive Acts and Practices, N.Y. Gen. Bus. Law §349, Against Defendant on Behalf of the New York Subclass**

198.    Plaintiff Hammonds incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

199.    New York General Business Law ("GBL") section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce[.]"

200.    In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL section 349.

201.    Defendant violated GBL section 349 by deceptively and misleadingly misrepresenting that the Teas contained no artificial flavorings.

202.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct intentionally marketed that the Teas were of a particular standard, grade, or quality when they in fact contained artificial flavorings.

203.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct described herein were directed at the consumer public at-large as they repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

204.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff Hammonds, the New York Subclass, and other reasonable consumers did and would have considered them when deciding whether to purchase the Teas. Had Plaintiff Hammonds and members of the New York Subclass known the Teas did not have the quality, ingredients, and standards as advertised by Defendant, and contained artificial flavorings, they would not have purchased the Teas or paid a premium price.

205.    Defendant had exclusive and superior knowledge of the information that was material to Plaintiff Hammonds and the New York Subclass that was not reasonably accessible to reasonable consumers. Defendant unfairly and misleadingly misrepresented such material information to consumers.

206.    Defendant has engaged and continues to engage in deceptive, unfair, and misleading conduct in violation of GBL section 349.

207.    Defendant intended for Plaintiff Hammonds and the New York Subclass to rely on its Misrepresentations, concealment, and other deceptive, unfair, and misleading

conduct regarding the Teas' quality, ingredients, and standards when purchasing the Teas, unaware of the misrepresented material facts.

208.    As a direct and proximate result of Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct, Plaintiff Hammonds and the New York Subclass suffered actual damages by paying a premium price for Teas they reasonably believed did not contain artificial flavorings.

209.    Pursuant to GBL section 349(h), Plaintiff Hammonds, on behalf of herself and the New York Subclass, seeks declaratory relief, full refund, compensatory and punitive damages, actual damages or $50 (whichever is greater), three times the actual damages (up to $1,000) to the extent Defendant is found to have acted willfully or knowingly in violating this statute, and attorneys' fees. Plaintiff Hammonds and the New York Subclass also seek costs to the extent permitted by law.

**<u>COUNT IX</u>**
**Violations of New York's False Advertising Law, N.Y. Gen. Bus. Law §350, Against Defendant on Behalf of Plaintiffs and the New York Subclass**

210.    Plaintiff Hammonds incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

211.    New York General Business Law ("GBL") section 350 prohibits false advertising in the conduct of any business, trade, or commerce.

212.    Pursuant to GBL section 350-a, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect . . . [considering] representations made by statement, word, design . . . or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations[.]"

213.   Defendant knew or should have known the Teas did not have the quality, ingredients, and standards as described above because they contained artificial citric acid as a flavoring.

214.   Defendant purposely misrepresented and did not fully disclose material facts regarding the presence of artificial flavoring to consumers, such as Plaintiff Hammonds and the New York Subclass.

215.   The facts misrepresented, concealed, or not fully disclosed by Defendant were material facts in that Plaintiff Hammonds, the New York Subclass, and other reasonable consumers would have considered them when deciding whether to purchase the Teas. Had Plaintiff Hammonds and members of the New York Subclass known the Teas did not have the quality, ingredients, and standards as advertised by Defendant and contained artificial flavoring, they would not have paid the price they did.

216.   Defendant's conduct caused Plaintiff Hammonds and the New York Subclass to suffer actual damages when they purchased the Teas that were worth less than the price paid.

217.   As a direct and proximate result of Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct, Plaintiff Hammonds and the New York Subclass suffered actual damages by paying a premium price for Teas they reasonably believed did not contain artificial flavoring.

218.   Pursuant to GBL section 350-e, Plaintiff Hammonds, on behalf of herself and the New York Subclass, seeks declaratory relief, full refund, compensatory and punitive damages, actual damages or $500 (whichever is greater), three times the actual damages (up to $10,000) to the extent Defendant is found to have acted willfully or

knowingly in violating this statute, and attorneys' fees. Plaintiff Hammonds and the New York Subclass also seek costs to the extent permitted by law.

<u>**COUNT X**</u>
**Unjust Enrichment Against Defendant on Behalf of the
Class or, Alternatively, the State Subclasses**

219.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

220.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of the Teas. Defendant knowingly and willingly accepted and enjoyed these benefits.

221.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Teas would not contain artificial flavorings. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

222.    Defendant's acceptance and retention of the benefits of the payments from Plaintiffs and the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

223.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

224.    Plaintiffs and the Class seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment for Plaintiffs and against Defendant as to each and every count, including:

A.　　An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

B.　　An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the State Subclass laws, plus pre- and post-judgment interest thereon;

C.　　An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

D.　　An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

E.　　An order requiring Defendant to pay punitive damages on any count so allowable;

F.　　An order awarding attorneys' fees and costs to Plaintiffs and the Classes; and

G.　　An order providing for all other relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: January 8, 2026

By: /s/ Kara A. Elgersma
**Kenneth A. Wexler**
**Kara A. Elgersma**
**Andrew D. Yoder**
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
Email: kaw@wbe-llp.com
kae@wbe-llp.com
ay@wbe-llp.com


**Mark R. Miller**
**Julia Ozello**
**Matthew J. Goldstein**
WALLACE MILLER
200 West Madison Street, Suite 3400
Chicago, IL 60606
Telephone: (312) 261 6193
Facsimile: (312) 275 8174
Email: mrm@wallacemiller.com
jo@wallacemiller.com
mjg@wallacemiller.com


**Counsel for Plaintiffs**