**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-CV-00086

MICHELLE CARPENTER,
LORI BERNSTEIN,
KANDISE BIGFEATHER,
MARTHA CARTER,
JAQUAY DAVIS,
SUSAN FREEMAN,
LISA GIBSON,
KRIS DEE HALL,
REBEKAH MYATT HAMMONDS,
AMBER RUST,
NANCI SELK, and
PATRICE VENTRESCA,

      Plaintiffs,

v.

CELESTIAL SEASONINGS, INC., a Delaware corporation

      Defendant.

---

### AMENDED CLASS ACTION COMPLAINT

---

1.     Plaintiffs Michelle Carpenter, Lori Bernstein, Kandise Bigfeather, Martha Carter, Jaquay Davis, Susan Freeman, Lisa Gibson, Kris Dee Hall, RebeKah Myatt Hammonds, Amber Rust, Nanci Selk, and Patrice Ventresca (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, file this Class Action Complaint against Defendant Celestial Seasonings, Inc. ("Defendant") for its knowing, reckless, unfair, false, misleading, and/or intentional misrepresentation about the nature of the flavoring ("Misrepresentations") used in several of its herbal teas.

2.     As set forth in more detail below, Defendant unambiguously states on the packaging of the widely-sold herbal teas at issue that they are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS," and that they contain "no artificial flavors," when in fact those teas contain synthetic citric acid which is added by Defendant to those teas as an artificial flavor.

3.     Plaintiffs seek monetary and equitable relief for themselves and on behalf of the proposed Classes (as defined herein).

4.     Plaintiffs' allegations are based upon their personal knowledge as well as publicly available information, and upon investigation by their counsel as to the Plaintiffs themselves, and as to all other matters, upon information and belief.

5.     Plaintiffs believe that substantial evidentiary support exists for the allegations set forth herein and will be revealed after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

6.     As it has for decades, Defendant manufactures, distributes, advertises, and sells a number of drinking teas. Currently, its tea products include herbal teas, Sleepytime tea, wellness teas, black teas, green teas, chai teas, and cold-brew iced teas.

7.     Defendant's specific products at issue in this case include Lemon Zinger Herbal Tea, Peach + Probiotics Herbal Tea, Country Peach Passion Herbal Tea, Jammin' Lemon Ginger Herbal Tea, and Wild Berry Zinger Herbal Tea ("Tea," individually, and "the Teas," collectively).

8.      On the principal display panel of each of the Teas, Defendant states right under the product name, that the Tea is "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS."

9.      On another panel of the packaging of each of the Teas, Defendant states that Defendant blends its "teas from the finest ingredients, with no artificial flavors or colors."

10.     These representations (the "Misrepresentations") are material, false, and misleading because the Teas are artificially flavored with synthetically-produced citric acid.

11.     Defendant's Misrepresentations are intended to convey to consumers exactly what they say—that the Teas only contain natural flavors, not synthetic ones. Plaintiffs were deceived by the Misrepresentations and bring this action, on behalf of themselves and similarly situated individuals they represent, to remedy the results of Defendant's deceptive conduct.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction over all causes of action asserted herein under 28 U.S.C. §1332(d) because the matter in controversy exceeds the sum or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendant is a citizen and in which this case is filed.

13.     The Court also has diversity jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(a) as the amount in controversy exceeds the sum or value of $75,000 and Plaintiffs and Defendant are citizens of different states.

14.     This Court has personal jurisdiction over Defendant because it conducts and transacts business throughout this District and the State of Colorado and it contracts to and does supply the Teas in this District and the State of Colorado. Defendant is responsible for the distribution, marketing, labeling, and sale of the Teas in this District, the State of Colorado, and throughout the United States. From its headquarters in this District in Colorado, Defendant markets the Teas and decides what it includes on the Teas' labels. Defendant has purposefully availed itself of the markets within Colorado through its advertising, marketing, and sale of the Teas. The Court also has specific jurisdiction over Defendant because it has intentionally directed activities toward Colorado and the claims asserted herein arise out of those activities, it is reasonable for Defendant to defend suit in this District because, by distributing and selling the Teas using the marketing and advertising developed and implemented in Colorado, Defendant caused harm to Plaintiffs and the Class/es that it knows is also likely to be suffered by Coloradans.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this District, and Defendant headquartered in this District.

<u>**THE PARTIES**</u>

16.     Plaintiff Nanci Selk ("Plaintiff Selk") is, and at times relevant hereto was, a citizen of the State of Washington and a resident of Endicott, Washington. She purchased the Teas, including Lemon Zinger Herbal Tea, Jammin' Lemon Ginger Herbal Tea, and Wild Berry Zinger Herbal Tea, for household use.

4

17.     Plaintiff Selk purchased the Teas for herself from Amazon, Inc., online from her home in Endicott, Washington, from approximately 2021 until October 2024.

18.     When buying the Teas, Plaintiff Selk reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Selk saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Selk would not have purchased the Teas if that information had been fully disclosed.

19.     Plaintiff Michelle Carpenter ("Plaintiff Carpenter") is, and at times relevant hereto was, a citizen of the State of Illinois and a resident of St. Charles, Illinois. She purchased the Teas, including Lemon Zinger, Jammin' Lemon Ginger, Country Peach Passion, and Wild Berry Zinger for household use. Plaintiff Carpenter purchased Wild Berry Zinger variety in 2024. Plaintiff Carpenter first purchased the Country Peach Passion variety beginning in 2020 and has purchased at least two boxes each summer since 2020. Upon moving to Illinois at the end of 2018, Plaintiff Carpenter has regularly stocked her pantry with both the Lemon Zinger and Jammin' Lemon Ginger varieties.

20.     Plaintiff Carpenter purchased the Tea from Jewel-Osco, Wal-Mart, and Target stores in St. Charles, Illinois.

21.     When buying the Teas, Plaintiff Carpenter reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Carpenter saw and relied upon

5

the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Carpenter would not have purchased the Teas if that information had been fully disclosed.

22.     Plaintiff Jaquay Davis ("Plaintiff Davis") is, and at times relevant hereto was, a citizen of the State of Illinois and a resident of Chicago, Illinois. She purchased the Teas, including Raspberry Zinger, Wild Berry Zinger, and Country Peach Passion for household use.

23.     Plaintiff Davis purchased the Tea from Wal-Mart and Dollar General in Chicago, Illinois from approximately 2004 to December 2025.

24.     When buying the Teas, Plaintiff Davis reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Davis saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Davis would not have purchased the Teas if that information had been fully disclosed.

25.     Plaintiff RebeKah Myatt Hammonds ("Plaintiff Hammonds") is, and at times relevant hereto was, a citizen of the State of New York and a resident of New York City, New York. She purchased the Tea, including Lemon Zinger and Raspberry Zinger for household use.

26.     Plaintiff Hammonds purchased the Tea from Target in New York City, New York from approximately December 2020 to December 2022.

27.     When buying the Tea, Plaintiff Hammonds reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Tea, Plaintiff Hammonds saw and relied upon the representations made by Defendant on the packaging of the Tea. When she purchased and consumed the Tea, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Tea was artificially flavored with synthetic citric acid. Plaintiff Hammonds would not have purchased the Tea if that information had been fully disclosed.

28.     Plaintiff Amber Rust ("Plaintiff Rust") is, and at times relevant hereto was, a citizen of the State of Minnesota and a resident of Maplewood, Minnesota. She purchased the Tea, including Lemon Zinger, for household use.

29.     Plaintiff Rust purchased the Tea from Amazon, Hy-Vee, and Cub in and/or near Maplewood, Minnesota from approximately 2020 to January 2025.

30.     When buying the Teas, Plaintiff Rust reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Rust saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Rust would not have purchased the Teas if that information had been fully disclosed.

7

31.     Plaintiff Lisa Gibson ("Plaintiff Gibson") is, and at times relevant hereto was, a citizen of the state of Colorado and a resident of the city of Fountain. She purchased the Tea, including Lemon Zinger, for household use.

32.     Plaintiff Gibson purchased the Tea from Walmart, Safeway, and King Soopers in the Colorado Springs, Colorado area from approximately 2002 to January 2026.

33.     When buying the Teas, Plaintiff Gibson reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Gibson saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Gibson would not have purchased the Teas if that information had been fully disclosed.

34.     Plaintiff Kris Dee Hall ("Plaintiff Hall") is, and at times relevant hereto was, a citizen of the state of Colorado and a resident of the city of Weston. She purchased the Tea, including Jammin' Lemon Ginger, for household use.

35.     Plaintiff Hall purchased the Tea from Safeway in Trinidad, Colorado from approximately 2022 to January 2026.

36.     When buying the Teas, Plaintiff Hall reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Hall saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased

8

and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Hall would not have purchased the Teas if that information had been fully disclosed.

37.    Plaintiff Lori Bernstein ("Plaintiff Bernstein") is, and at times relevant hereto was, a citizen of the state of Colorado and a resident of the city of Denver. She purchased the Tea, including Lemon Zinger, for household use from approximately 2018 to January 2026.

38.    Plaintiff Bernstein purchased the Teas online from Amazon, and from local King Soopers and Target stores.

39.    When buying the Teas, Plaintiff Bernstein reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Berstein saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Bernstein would not have purchased the Teas if that information had been fully disclosed.

40.    Plaintiff Kandise Bigfeather ("Plaintiff Bigfeather") is, and at times relevant hereto was, a citizen of the state of Colorado and a resident of the city of Boulder. She purchased the Tea, including Lemon Zinger for household use.

41.    Plaintiff Bigfeather purchased the Tea from Kroger, Safeway, and Lucky's in Boulder, Colorado from approximately 1994 to January 2026.

42.    When buying the Teas, Plaintiff Bigfeather reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Bigfeather saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Bigfeather would not have purchased the Teas if that information had been fully disclosed.

43.    Plaintiff Martha Carter ("Plaintiff Carter") is, and at all times relevant hereto was, a citizen of the state of California and a resident of the city of Pittsburg. She purchased the Teas, including Lemon Zinger, for household use.

44.    Plaintiff Carter purchased the Teas from Safeway and Winco in Pittsburg, California from approximately 2020 to January 2026.

45.    When buying the Teas, Plaintiff Carter reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Carter saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Carter would not have purchased the Teas if that information had been fully disclosed.

46.    Plaintiff Susan Freeman ("Plaintiff Freeman") is, and at all times relevant hereto was, a citizen of the state of California and a resident of the city of Alameda. She purchased the Teas, including Jammin' Lemon Ginger, for household use.

47.    Plaintiff Freeman purchased the Teas from Alameda Natural Grocery from approximately 2020 to 2025.

48.    When buying the Teas, Plaintiff Freeman reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Freeman saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate and material Misrepresentations, that the Tea were artificially flavored with synthetic citric acid. Plaintiff Freeman would not have purchased the Teas if that information had been fully disclosed.

49.    Plaintiff Patrice Ventresca ("Plaintiff Ventresca") is, and at times relevant hereto was, a citizen of the state of California and a resident of the city of Mountain View. She purchased the Teas, including County Peach Passion, for household use.

50.    Plaintiff Ventresca purchased the Teas from Safeway in Mountain View, California from approximately 2020 to January 2026.

51.    When buying the Teas, Plaintiff Ventresca reasonably believed that she had purchased and would be consuming a beverage that was all-natural and that contained no artificial flavoring. Prior to purchasing the Teas, Plaintiff Ventresca saw and relied upon the representations made by Defendant on the packaging of the Teas. When she purchased and consumed the Teas, she was unaware, because of Defendant's deliberate

and material Misrepresentations, that the Teas were artificially flavored with synthetic citric acid. Plaintiff Ventresca would not have purchased the Teas if that information had been fully disclosed.

52.    As the result of Defendant's intentionally, recklessly, and/or knowingly deceptive, unfair, and misleading conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Teas that were artificially flavored despite Defendant's explicit representations to the contrary. Plaintiffs paid the purchase price on the reasonable belief and assumption that the Teas' packaging was accurate and the Teas did not contain any artificial flavors or ingredients. Plaintiffs would not have paid this money had they known the truth about the Misrepresentations. Damages can be calculated through expert testimony at trial.

53.    Defendant Celestial Seasonings, Inc. is a Delaware corporation with its principal place of business in Boulder, Colorado, in Boulder County. Defendant has intentionally availed itself of the laws and markets of this District, and Defendant is subject to personal jurisdiction in this District. Celestial Seasonings, Inc. is a subsidiary of The Hain Celestial Group, Inc. The Hain Celestial Group, Inc. is publicly traded and had net sales of over $1.5 billion in 2025.

54.    Defendant, one of the largest producers and distributors of herbal teas in the United States, has developed, manufactured, labeled, distributed, marketed, advertised, and sold the Teas under the Celestial Seasonings name throughout the United States, including in this District. It has done so continuously from at least January 2020, to present (the "Relevant Period").

12

55.    During the Relevant Period, Defendant knowingly created, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging of and related marketing for the Teas which represented to consumers that the Teas contain only natural flavors, when in fact they contain artificial flavor in the form of synthetic citric acid.

56.    During the Relevant Period, Defendant has been responsible for sourcing the Teas' ingredients, manufacturing the Teas, and conducting all relevant quality assurance protocols, including testing the Teas' ingredients and ensuring that the finished products comported with the representations made about them on the Teas' packaging and by the Defendant's advertising.

57.    The Teas' packaging and the material Misrepresentations were prepared, reviewed, and/or approved by Defendant and its agents at its headquarters in Colorado and disseminated by Defendant and its agents to consumers. The Misrepresentations were content that a reasonable consumer would consider important in purchasing the Teas.

## **FACTUAL ALLEGATIONS**

**I.     Defendant Publicly Markets Itself as Being Committed to the Production and Distribution of Quality Natural Products.**

58.    Defendant promotes itself as "the original herbal tea company," that, in 1969, began a "movement" to "shift towards healthier, happier little moments carved into ever-busier days."[1]

---

[1] https://celestialseasonings.com/pages/learn-about-us, last visited December 13, 2025.

59.    Founded over fifty years ago, Celestial Seasonings aimed to "provide delicious, high quality teas that are good for [its] customers and good for the world."[2]

60.    Defendant touts its commitment to quality and sustainability as "Blended with Care: From Seed to Sip" and outlines its eight-step process "from the farmers' fields to your teacup."[3] Defendant claims to test all of the raw ingredients it uses in its products "for purity and quality," because, in Defendant's words, "[h]ere at Celestial Seasonings, we believe in the safety, purity and quality of our products, and we are committed to social and environmental responsibility in everything we do."[4]

61.    "All" of the raw ingredients Defendant uses are "tested for purity and quality" and are "cleaned and milled in-house."[5]

## II.    Defendant Unambiguously Represents to Consumers that the Teas are Naturally Flavored and Contain no Artificial Flavors

62.    In addition to its packaging, Defendant states on its website: "In addition to natural herbs, teas, spices and botanicals, some of our teas use natural flavors to achieve their unique tastes. The natural flavors we use are derived from real ingredients and do not contain artificial or synthetic additives."[6]

63.    The principal display panels on the packaging of each of the Teas' labels unambiguously state that each of the Teas is "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS."

---

[2] https://celestialseasonings.com/pages/blended-with-care-from-seed-to-sip, last visited December 13, 2025.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6]    https://celestialseasonings.com/pages/frequently-asked-questions,    last    visited December 13, 2025.

64.    The following image is a true and correct copy of the principal display panel of Lemon Zinger Herbal Tea:



65.    The following image is a true and correct copy of the principal display panel of Peach + Probiotics Herbal Tea:



66.    The following image is a true and correct copy of the principal display panel of Country Peach Passion Herbal Tea:

15



67.    The following image is a true and correct copy of the principal display panel

of Jammin' Lemon Ginger Herbal Tea:



68.    The following is a true and correct copy of the principal display panel of Wild

Berry Zinger Herbal Tea:

16



69.     For all of these Teas, Defendant places the phrase "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" directly underneath each product's name on the Teas' principal display panels in order to ensure that consumers notice that phrase when deciding whether to buy those Teas.

70.     Defendant places the phrase "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" on the principal display panel of the Teas' packaging intending for consumers to rely on that phrase.

71.     The phrase "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" has appeared continually on the Teas' principal display panels throughout the Relevant Period.

72.     Defendant reinforces to consumers its unequivocal representation that the Teas consist solely of natural, and not artificial, flavors on a side panel of the packaging for each of the Teas, where Defendant states: "**Quality Ingredients**: We blend our teas from the finest ingredients, with no artificial flavors or colors."

17

73.     The following image is a true and correct copy of one of the side panels of the Teas:



74.     The sentence "We blend our teas from the finest ingredients, with no artificial flavors or colors" has appeared continually on a panel of the Teas' packaging throughout the Relevant Period.

75.     Defendant makes the representation, "**Quality Ingredients:** We blend our teas from the finest ingredients, with no artificial flavors or colors" on a panel of the Teas' packaging intending for consumers to rely on it.

76.     Defendant further reinforces, on its website, its claim that the Teas contain only natural, and not artificial, flavors in the following statement: "In addition to natural herbs, teas, spices, and botanicals, some of our teas use natural flavors to achieve their

18

unique tastes. The natural flavors we use are derived from real ingredients and do not contain artificial or synthetic additives."[7]

### III.     Contrary to its Representations to Consumers, the Teas Contain Artificial Flavors.

77.     Defendant's representation on the principal display panels of the Teas' packaging that the Teas are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" is false, materially misleading, and known by the Defendant to be false and materially misleading.

78.     Defendant's representation on another panel of the Teas' packaging that "[w]e blend our teas from the finest ingredients, with no artificial flavors or colors" is also false materially misleading, and known by Defendant to be false and materially misleading.

79.     The reason these representations are false and misleading is that each of the Teas is artificially flavored with synthetically-produced citric acid; not natural citric acid.

80.     Each of the Teas lists "citric acid" on their ingredient panel.

81.     The Lemon Zinger Herbal Tea panel says: **Ingredients:** Hibiscus, Orange Peel, Roasted Chicory, Rosehips, Lemongrass, Lemon Peel, Natural Lemon Flavor with Other Natural Flavors, Citric Acid.

82.     The Peach + Probiotics Herbal Tea panel says: **Ingredients**: Orange Peel, Rosehips, Hawthorn, Chamomile, Natural Peach Flavor with Other Natural Flavors, Blackberry Leaves, Hibiscus, Bacillus Coagulans GBI-30 6086, Citric Acid.

---

[7]     https://celestialseasonings.com/pages/frequently-asked-questions, last visited December 13, 2025.

83.    The Country Peach Passion Herbal Tea panel says: **Ingredients**: Orange Peel, Rosehips, Hawthorn, Chamomile, Natural Peach Flavor with Other Natural Flavors, Blackberry Leaves, Hibiscus, Dried Peaches, Citric Acid.

84.    The Jammin' Lemon Ginger Herbal Tea panel says: **Ingredients**: Ginger, Lemon Verbena, Lemongrass, Natural Lemon and Ginger Flavors with Other Natural Flavors, Rosehips, Roasted Chicory, Citric Acid, Lemon Powder.

85.    The Wild Berry Zinger Herbal Tea panel says: **Ingredients**: Hibiscus, Rosehips, Roasted Chicory, Orange Peel, Blackberry Leaves, Natural Flavors of Raspberries and Blueberries with Other Natural Flavors, Citric Acid.

86.    Citric acid has been an ingredient of each of the Teas continually throughout the Relevant Period.

### A.    Citric Acid

87.    Naturally occurring citric acid exists in many fruits and vegetables.

88.    Synthetically-produced citric acid, known as manufactured citric acid ("MCA"), as opposed to the naturally occurring kind that exists in fruits and vegetables, is utilized extensively in food manufacturing. MCA is subject to significant chemical processing.[8]

89.    The vast majority of MCA (estimated 99%) is synthesized using mutant strain of a black mold *Aspergillus niger*.[9]

90.    The "Solvent extraction process for citric acid" requires the "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor" which allows the production

---

[8] *See, e.g.,* https://pmc.ncbi.nlm.nih.gov/articles/PMC7178817/
[9] https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/

of "food-grade citric acid in accordance with" specified conditions, including that "[t]he solvent used in the process consists of a mixture of *n-* octyl alcohol meeting the requirements of §172.864 of this chapter, synthetic isoparaffinic petroleum hydrocarbons meeting the requirements oof §172.882 of this chapter, and tridocecyl amine." 12 C.F.R. §173.280.

91.    The solvent extraction process for citric acid uses chemical solvents (*n-*octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons) to extract the citric acid from the *Aspergillus niger* fermentation liquor and residue of the chemical solvents remains in "finished" MCA.

92.    MCA is an unnatural substance. Nearly all MCA begins with highly processed glucose from corn syrup derived from corn, with less from beet sugar, cane molasses, and fruit waste.[10]

93.    According to the FDA, MCA is not natural. The FDA has warned food manufacturers cannot advertise products as "100% Natural" or "All Natural" if they contain citric acid.

94.    The FDA has stated that citric acid is an artificial and synthetic additive in multiple warning letters to the food industry. *See, e.g.*, Warning Letter to Oak Tree Farm Dairy, Food & Drug Admin. (Aug. 16, 2001) (use of the phrase "Nothing Artificial" on a label was misleading to consumers "because [the food] contains citric acid"); Warning Letter to Hirzel Canning Co., Food & Drug Admin. (Aug. 29, 2001) ("[T]he addition of … citric acid to these products preclude the use of the term 'natural' to describe the

---

[10] *Id.*

21

product.''); Warning Letter to Fresh Express Inc., Food & Drug Admin. (Aug. 6, 2010) (citric acid on nutrition label without description of function is misbranding.).[11]

95.     Although in South America, Mexico, and Greece there still exist some factories where citric acid is isolated from unripe citrus fruits, today over 99 per cent of the world's output of citric acid is produced through artificial means.[12]

**B.     Defendant Adds MCA as an Ingredient in Each of the Teas**

96.     All of the citric acid that Defendant adds as an ingredient in each of the Teas is synthetically produced.

97.     Defendant does not add natural citric acid as an ingredient in any of the Teas.

98.     If the citric acid added by Defendant as an ingredient in the Teas were wholly natural, Defendant would not have listed it as a separate item on the Teas' ingredient lists because it would have fallen with the ambit of "other natural flavors" that appears on the Teas' ingredient lists.

99.     Because the citric acid that Defendant adds to the Teas is MCA, and not natural citric acid (or an "other natural flavor"), the ingredient panels include citric acid as a separate ingredient presumably to comply with federal law requiring the identification of all ingredients in a product.

---

[11] Copies of the August 16, 2001, August 29, 2001, and October 6, 2010 letters, pulled from the FDA website, are attached hereto as Exhibit A.

[12] Behera, B. C. (2020). Citric acid from *Aspergillus niger*: a comprehensive overview. *Critical Reviews in Microbiology*, *46*(6), 727–749. https://doi.org/10.1080/1040841X.2020.1828815

100.    Defendant's separate listing for citric acid on its ingredient list confirms the fact that the citric acid added by Defendant to the Teas is MCA, and not natural citric acid.

101.    Unfortunately, reasonable consumers are unaware, because of Defendant's Misrepresentations, that the citric acid in the Teas is synthetically-made, and not natural.

102.    Instead, reasonable consumers believe and rely upon what they are explicitly told by product makers, in plain English, on product labels, and in this case, consumers were unambiguously told by Defendant, and therefore reasonably believed, that the Teas are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" and that Defendant blends the Teas "from the finest ingredients, with no artificial flavors or colors."

**C.    Defendant Adds MCA in Order to Flavor the Teas**

103.    Citric acid, including the MCA that Defendant adds to its Teas, is an acidulant.

104.    Defendant knowingly and purposefully adds MCA as an ingredient in its Teas in order to impart a tart, sour and tangy flavor component to those Teas.

105.    The Teas therefore contain artificial flavor.

106.    Defendant does not add MCA to its Teas for the purpose of using MCA as a preservative.  That is evident from the fact that Defendant does not add citric acid as an ingredient in any of its many other herbal tea products.

107.    Rather, the reason Defendant adds MCA as an ingredient in the Teas is for the MCA to add flavor to those Teas.

**IV.    Defendant's Packaging Misled Reasonable Consumers Based on the Overall Impression and Material Misrepresentations**

**A.    Defendant's Misrepresentations**

108.    Defendant had a duty to ensure that the Teas were not misbranded

109.    Defendant breached that duty, and continues to breach that duty, by making representations about the Teas that are false and materially misleading.

110.    Specifically, Defendant's representation on the panels of the Teas' packaging that the Teas contain "no artificial flavors" is false and known by Defendant to be false, because Defendant knowingly adds MCA in order to flavor the Teas.

111.    Defendant's representation on its website that "[t]he natural flavors we use [in our Teas] are derived from real ingredients and do not contain artificial or synthetic additives" is also false and known by Defendant to be false, because Defendant knowingly adds MCA in order to flavor the Teas.

112.    Defendant's representation on the principal display panels of the Teas' packaging that the Teas are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" is also false and known to be false by Defendant, because, as Defendant is well aware, the Teas are not entirely "naturally flavored" but also contain artificial flavor.

113.    Additionally, Defendant's representation on the principal display panels of the Teas' packaging that the Teas are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" is materially misleading to reasonable consumers, and known by Defendant to be materially misleading to consumers, because Defendant deliberately conceals from consumers the material fact that the Teas contain artificial flavor.

114.    Given Defendant's explicit representation on the Teas' packaging that the Teas are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" and contain

24

"no artificial flavor," no reasonable consumer would expect or understand the Teas to be artificially flavored with MCA.

115. Indeed, Defendant, on its packaging for the Teas, affirmatively represents to consumers that the Teas are not artificially flavored but are, instead, naturally flavored.

116. Defendant's Misrepresentations are deliberate, planned, continual in nature, and designed to deceive consumers about facts that are important to consumers when deciding whether to buy the Teas.

117. If Defendant deemed it important enough to include the phrase "[w]e blend our teas from the finest ingredients…with no artificial flavors" on each and every package of its Teas during the Relevant Period—as it plainly does—then Defendant, itself, is acknowledging its recognition of the fact that its customers do not want artificial flavors in their Teas.

**B.    Consumers Are Damaged by Defendant's Misrepresentations**

118. Reasonable consumers must and do rely on Defendant to honestly report what its Teas contain.

119. Plaintiffs relied on the Teas' packaging when making purchasing decisions.

120. Plaintiffs' expectations and reliance are consistent with reasonable consumers.

121. Plaintiffs and the Class Members paid premium prices for Tea that were falsely, misleadingly, and deceptively marketed to them by Defendant as being naturally flavored and containing no artificial flavors, when in fact they are artificially flavored.

122. The Misrepresentations were intended to and did, in fact, cause consumers like Plaintiffs and the members of the Class, to purchase products they otherwise would not have, had they known the true nature of and ingredients in the Teas.

123. As a direct result of Defendant's deceptive, unfair, false, and misleading representations about the Teas, Defendant generated substantial sales and reaped enormous profits at consumers' expense.

124. The Misrepresentations are material and reasonably likely to deceive reasonable consumers, such as Plaintiffs, in purchasing decisions. The materiality of the Misrepresentations is especially true considering the overall campaign by Defendant to advertise and market the Teas as made with natural, high-quality, healthy ingredients, "from Seed to Sip," and to induce consumers, such as Plaintiffs, to purchase the Teas.

125. The Misrepresentations on the Teas' packaging is deceptive, unfair, and/or misleading. Reasonable consumers, like Plaintiffs, did and would consider the fact that Teas contain artificial flavors when considering whether and which tea to purchase.

126. Defendant's packaging was misleading due to Defendant's failure to disclose the true nature of the ingredients in the Teas.

127. Defendant knew or should have known that reasonable consumers expected "Naturally flavored with other natural flavors" and "no artificial flavors" to mean that all flavors used would be natural and not synthetic.

128. Defendant knew or should have known consumers paid premium prices as a result of the Misrepresentations.

129. The Misrepresentations are material and render the Teas' packaging deceptive, unfair, and misleading.

130.    The Misrepresentations were intended to and did, in fact, cause consumers like Plaintiffs and the members of the Class, to purchase products they otherwise would not have, had they known the true nature and ingredients in the Teas.

131.    As a result of Defendant's deceptive, unfair, and misleading packaging of the Teas, Defendant generated substantial sales, which allowed Defendant to reap enormous profits from consumers who paid the purchase price or premium for the Teas that were not as advertised.

## PLAINTIFFS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANT

132.    Plaintiffs read and relied upon the packaging of the Teas when making their purchasing decisions. Had they known Defendant misrepresented that the Teas contained no artificial flavors, they would not have paid the purchase price of the Teas.

133.    Reasonable consumers consider a product's packaging when deciding whether to purchase it.

## PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASS

134.    Defendant knew that reasonable consumers such as Plaintiffs and the proposed Class members would be the end purchasers of the Teas and the targets of its advertising, marketing, packaging, and statements.

135.    Defendant intended that the packaging would be considered by the end purchasers of Teas, including Plaintiffs and the proposed Class members.

136.    Defendant directly marketed to Plaintiffs and the proposed Classes through its packaging.

## APPLICABILITY OF EQUITABLE TOLLING AND THE DISCOVERY RULE TO THE STATUTE OF LIMITATIONS

27

137.    Fraudulent concealment and/or the discovery rule toll Plaintiffs' claims.

138.    The statute of limitations is tolled for all of Plaintiffs' statutory consumer protection and common law claims due to Defendant's fraudulent concealment of the fact that the Teas contained artificial flavoring ingredients. Defendant intentionally misrepresented these material facts to Plaintiffs.

139.    Defendant knew the Misrepresentations were a material consideration for any consumer buying the Teas.

140.    Defendant violated the relevant state consumer fraud acts by deceiving customers as to the true nature, quality, and makeup of the Teas.

141.    The discovery rule also protects Plaintiffs' claims.

142.    Plaintiffs could not reasonably discover that the Teas contained artificial citric acid without conducting their own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing.

143.    Plaintiffs did not know that the Teas contained MCA. Instead, Defendant only represented that the Teas were naturally flavored, contained no artificial flavorings, and are made of high-quality ingredients.

## CLASS ACTION ALLEGATIONS

144.    Plaintiffs bring this action individually and on behalf of the following classes pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> **Nationwide Class**: Under the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101 *et seq.*, all persons who, from January 8, 2023, to the present, purchased the Teas for household use, and not for resale (the "Class").

**Colorado Subclass:** Under the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101 *et seq.*, all persons who are citizens of Colorado, from January 8, 2023, to the present, purchased the Teas for household use, and not for resale (the "Colorado Subclass")

**Illinois Subclass**: All persons who are citizens of Illinois who, from January 8, 2023, to the present, purchased the Teas for household use, and not for resale (the "Illinois Subclass").

**Washington Subclass**: All persons who are citizens of Washington who, from January 8, 2022, to the present, purchased the Teas for household use, and not for resale (the "Washington Subclass").

**Minnesota Subclass**: All persons who are citizens of Minnesota who, from January 8, 2020, to the present, purchased the Teas for household use, and not for resale (the "Minnesota Subclass").

**New York Subclass**: All persons who are citizens of New York who, from January 8, 2023, to the present, purchased the Teas for household use, and not for resale (the "New York Subclass").

**California Subclass**: All persons who are citizens of California who, from January 8, 2023, to the present, purchased the Teas for household use, and not for resale (the "California Subclass").

145.    Collectively, the Colorado, Illinois, Washington, Minnesota, New York, and California Subclasses are referred to as the "State Subclasses."

146.    Excluded from the Class and State Subclasses (collectively, "Classes") are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

147.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

148.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

149.    Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

(a)    whether Defendant owed a duty of care;

(b)    whether Defendant knew or should have known that the Teas contained MCA;

(c)    whether the claims of Plaintiffs and the Classes serve a public benefit;

(d)    whether Defendant's packaging is false, deceptive, unfair, and misleading based on the Misrepresentations;

(e)    whether the Misrepresentations are material to a reasonable consumer;

(f)    whether the Misrepresentations are likely to deceive a reasonable consumer;

(g)    whether Defendant had knowledge that the Misrepresentations were material and false, deceptive, unfair, and/or misleading;

(h)    whether Defendant violated the Colorado Consumer Protection Act;

(i)    whether Defendant violated the laws of the State of Colorado;

(j)      whether Defendant violated the laws of the State of Illinois;

(k)      whether Defendant violated the laws of the State of Washington;

(l)      whether Defendant violated the laws of the State of Minnesota;

(m)      whether Defendant violated the laws of the State of New York;

(n)      whether Defendant violated the laws of the state of California;

(o)      whether Defendant engaged in unfair trade practices;

(p)      whether Defendant engaged in false advertising;

(q)      whether Defendant made fraudulent misrepresentations;

(r)      whether Plaintiff and Class members' claims are tolled based on Defendant's fraudulent misrepresentations;

(s)      whether Plaintiffs and members of the Classes are entitled to actual, statutory, and punitive damages; and

(t)      whether Plaintiffs and members of the Classes are entitled to declaratory relief.

150.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved. Individual questions, if any, do not predominate in comparison to the numerous common questions that will guide the resolution of this action.

151.   Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

152.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

153.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

154.    Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

155.    As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
**Violations of the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101 *et seq.*
Against Defendant by All Plaintiffs on Behalf of the Nationwide Class**

156.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

157.    Defendant, Plaintiffs, and each Class member are "Persons" within the meaning of C.R.S.A. § 6-1-102(6).

158.    Plaintiffs and each Class member are actual or potential consumers of Defendant's Teas.

159.    Defendant knowingly or recklessly falsely represented that the Teas were flavored only with natural flavors and contained no artificial flavors when the Teas were flavored with MCA.

160.    Defendant's decisions about the ingredients used in the Teas and the representations made on the Teas' packaging emanated from its headquarters in Colorado.

161.    The ingredients used in the Teas are material to Plaintiffs and reasonable consumers deciding whether to purchase the Teas.

162.    Whether the Teas are flavored with "natural flavors," as opposed to artificial or synthetic flavors is material to Plaintiffs and reasonable consumers deciding whether to purchase the Teas.

163.    Defendant's conduct, as described, constitutes unfair or deceptive practices as defined by the Colorado Consumer Protection Act ("CCPA"), C.R.S.A. §6-1-105(1)(e).

164.    As a direct and proximate result of Defendant's unfair and deceptive conduct, Plaintiffs and each Class member have been injured.

165.    As a result of Defendant's unfair and deceptive conduct, Plaintiffs and each Class member have been damaged by paying a price premium for Teas which Defendant said contained only natural, and no artificial, flavors when the Teas contained MCA.

166.    Had Plaintiffs and each Class member known that the Teas contained MCA, contrary to the representations on the packaging, Plaintiffs and each Class member would (1) not have paid the price premium for the Teas; or (2) not have purchased the Teas at any price.

167.    As a result of the damages caused by Defendant's Misrepresentations, Plaintiffs and the Class are entitled to actual damages to be proved at trial, injunctive relief, and reasonable attorneys' fees and costs.

**COUNT II**
**Violations of the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101 *et seq.***
**Against Defendant by All Plaintiffs on Behalf of the Colorado State Subclass**

168.    Plaintiffs Bernstein, Bigfeather, Gibson, and Hall incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

169.    Defendant, Plaintiffs Bernstein, Bigfeather, Gibson, and Hall, and each Class member are "Persons" within the meaning of C.R.S.A. § 6-1-102(6).

170.    Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and each Class member are actual or potential consumers of Defendant's Teas.

171.    Defendant knowingly or recklessly falsely represented that the Teas were flavored only with natural flavors and contained no artificial flavors when the Teas were flavored with MCA.

172.    Defendant's decisions about the ingredients used in the Teas and the representations made on the Teas' packaging emanated from its headquarters in Colorado.

173.    The ingredients used in the Teas are material to Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and reasonable consumers deciding whether to purchase the Teas.

174.    Whether the Teas are flavored with "natural flavors," as opposed to artificial or synthetic flavors is material to Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and reasonable consumers deciding whether to purchase the Teas.

175.    Defendant's conduct, as described, constitutes unfair or deceptive practices as defined by the Colorado Consumer Protection Act ("CCPA"), C.R.S.A. §6-1-105(1)(e).

34

176.    As a direct and proximate result of Defendant's unfair and deceptive conduct, Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and each Class member have been injured.

177.    As a result of Defendant's unfair and deceptive conduct, Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and each Class member have been damaged by paying a price premium for Teas which Defendant said contained only natural, and no artificial, flavors when the Teas contained MCA.

178.    Had Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and each Class member known that the Teas contained MCA, contrary to the representations on the packaging, Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and each Class member would (1) not have paid the price premium for the Teas; or (2) not have purchased the Teas at any price.

179.    As a result of the damages caused by Defendant's Misrepresentations, Plaintiffs Bernstein, Bigfeather, Gibson, and Hall and the Class are entitled to actual damages to be proved at trial, injunctive relief, and reasonable attorneys' fees and costs.

### COUNT III
**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §505/1, *et seq.*, Against Defendant on Behalf of the Illinois Subclass**

180.    Plaintiffs Carpenter and Davis incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

181.    Plaintiffs Carpenter and Davis and each Illinois Subclass member are "persons" within the meaning of 815 Ill. Comp. Stat. §505/1(c).

182.    Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. §505/1(c).

35

183.    The Teas are "merchandise" within the meaning of 815 Ill. Comp. Stat. §505/1(b).

184.    Plaintiffs Carpenter and Davis and each Illinois Subclass member's purchase of Defendant's Teas constituted a sale of merchandise within the meaning of 815 Ill. Comp. Stat. §505/1(d).

185.    The conduct described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.* ("ICFA").

186.    Defendant engaged in a deceptive, unfair, and misleading act or practice in violation of ICFA by knowingly misrepresenting the Teas' true quality, and nature of ingredients' manufacturing and the presence of artificial flavorings in the Teas.

187.    Defendant's deceptive acts and practices are continuing.

188.    Defendant intended for Plaintiffs Carpenter and Davis and the Illinois Subclass members to rely on and accept as true the Teas' packaging and Misrepresentations in deciding whether to purchase the Teas, and at what price.

189.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to deceive consumers with respect to the Teas' quality, ingredients, and presence of artificial flavorings.

190.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to cause consumers to purchase and/or overpay for the Teas.

191.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading acts occurred before Plaintiffs Carpenter and Davis and the Illinois Subclass decided to purchase the Teas.

192.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct did in fact deceive Plaintiffs Carpenter and Davis and the Illinois Subclass with respect to Teas' quality, ingredients, and presence of artificial flavorings.

193.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct did in fact deceive and cause Plaintiffs Carpenter and Davis and the Illinois Subclass to purchase and overpay for the Teas.

194.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

195.    The facts concealed or not fully disclosed by Defendant that the Teas contained artificial flavorings that do not conform to the packaging are material facts because Plaintiffs Carpenter and Davis, the Illinois Subclass, and any reasonable consumer would have considered those facts important in deciding whether to purchase the Teas, and at what price.

196.    If Plaintiffs Carpenter and Davis and the Illinois Subclass had known that the Teas contained artificial flavoring, they would not have paid the price premium they paid for the Teas.

197.    If Plaintiffs Carpenter and Davis and the Illinois Subclass had known that the Teas did not in fact match the quality and ingredients described above, they would not have purchased Teas at all.

198.  As a result of Defendant's conduct, Plaintiffs Carpenter and Davis and the Illinois Subclass members have suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavoring; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

199.  As a result of Defendant's conduct, Plaintiffs Carpenter and Davis and the Illinois Subclass have suffered actual damages, in that they purchased Teas that they would not have purchased at all if they had knowledge of the Misrepresentations.

200.  As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Plaintiffs Carpenter and Davis and the Illinois Subclass members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

201.  Defendant's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiffs Carpenter and Davis and the Illinois Subclass to an award of punitive damages.

### COUNT IV
### Violation of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.020, *et seq.*, Against Defendant on Behalf of the Washington Subclass

202.  Plaintiff Selk incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

203.  Plaintiff Selk, the Washington Subclass members, and Defendant are all "persons" as defined in the WCPA. Wash. Rev. Code § 19.86.010(1).

204.  Plaintiff Selk, the Washington Subclass members, and Defendant engaged in "commerce" as defined in the WCPA while marketing, offering for sale, selling, and

purchasing the Tea in Washington and throughout the United States. Wash. Rev. Code § 19.86.010(2).

205.    The WCPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

206.    Defendant intentionally misrepresented and suppressed full disclosure of material facts regarding the presence of artificial flavoring in Teas.

207.    Defendant's misleading Misrepresentations concealed that the Teas' contained artificial citric acid as a flavoring. Defendant's Misrepresentations gives rise to a violation of the WCPA.

208.    Defendant Misrepresented this material information with the intent to induce consumers, such as Plaintiff Selk and the Washington Subclass, to purchase the Teas.

209.    Defendant engaged in deceptive, unfair, and misleading practices in the conduct of its trade or commerce.

210.    Defendant's deceptive, unfair, and misleading conduct, as alleged herein, is injurious to the public interest as it has the capacity to deceive a substantial part of the public and injure other persons.

211.    Defendant's deceptive, unfair, and misleading practices injured and continue to injure the public interest by misleading reasonable consumers into buying products they would not have purchased. These injuries greatly outweigh any potential countervailing benefit to consumers or competition. Defendant has no legally cognizable interest in misleading consumers regarding the nature and quality of ingredients in their

Teas, a material fact that reasonable consumers consider when making purchasing decisions.

212.   As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Defendant is liable to Plaintiff Selk and the Washington Subclass in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Washington Revised Code section 19.86.090.

## COUNT V
### Violation of Minnesota Unlawful Trade Practices Act, Minn. Stat. §325D.13, *et seq.*, Against Defendant on Behalf of the Minnesota Subclass

213.   Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

214.   Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices Act ("MUTPA").

215.   Defendant violated the MUTPA by knowingly making the Misrepresentations.

216.   Defendant knew or should have known the Teas were not of the true quality advertised because they contained artificial citric acid as a flavoring.

217.   Defendant's pattern of knowing Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiffs and the Minnesota Subclass with respect to the Teas' quality and ingredients.

218.   Defendant intended for Plaintiff Rust and the Minnesota Subclass to rely on its Misrepresentations, concealment, and/or deceptions regarding the Teas' quality and ingredients.

219.   Defendant's conduct and Misrepresentations described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

220.   The facts misrepresented, concealed, omitted, or not fully disclosed by Defendant were material facts in that Plaintiffs, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Teas. Had Plaintiffs and the Minnesota Subclass known the Teas did not have the quality advertised by Defendant, they would not have purchased Teas or paid the premium price.

221.   Defendant's unlawful conduct is ongoing and there is no indication that it intends to cease this fraudulent course of conduct.

222.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

223.   Pursuant to Minn. Stat. §8.31, subd. 3a, and § 325D.15, Plaintiffs and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MUTPA.

<u>**COUNT VI**</u>
**Violations of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §
325D.44, *et seq.*, Against Defendant on Behalf of the Minnesota Subclass**

224.    Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

225.    Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA").

226.    Defendant willingly engaged in deceptive trade practices, in violation of the MUDTPA, by failing to disclose the Misrepresentations.

227.    Defendant knew or should have known the Teas contained artificial citric acid as a flavoring.

228.    Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Rust and the Minnesota Subclass with respect to the Teas' ingredients, standards, quality, grade.

229.    Defendant intended that Plaintiff Rust and the Minnesota Subclass would rely on Defendant's Misrepresentations, concealment, implied warranties, and/or deceptions regarding the Teas' ingredients' standards, quality, and nature.

230.    Defendant's conduct and Misrepresentations described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

231.    The facts misrepresented, concealed, omitted, or not fully disclosed by Defendant were material facts in that Plaintiff Rust, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the

Teas. Had Plaintiffs and the Minnesota Subclass known the Teas did not have the quality advertised by Defendant, they would not have purchased the Teas.

232.    Defendant intended that Plaintiffs and the Minnesota Subclass would rely on Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct when purchasing the Teas, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

233.    Defendant's unlawful conduct is continuing, with no indication it intends to cease this fraudulent course of conduct.

234.    As a direct and proximate result of Defendant's conduct, Plaintiff Rust and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff Rust and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MUDTPA.

### COUNT VII
**Violations of Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67,
*et. seq.*, Against Defendant on Behalf of the Minnesota Subclass**

235.    Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

236.    Plaintiff Rust and the Minnesota Subclass purchased "goods," specifically the Teas discussed herein, and are a "person" within the meaning of the False Statement in Advertising Act ("FSAA").

237.    Plaintiff Rust and the Minnesota Subclass purchased the Teas because of the Misrepresentations asserted on the packaging that were made, published, disseminated, circulated, and placed before the public by Defendant.

238.    By engaging in the conduct described herein, Defendant has and continues to violate Minn. Stat. § 325F.67.

239.    Defendant's Misrepresentations and use of other deceptive, unfair, and misleading business practices include, by way of example, representations that the Teas were all-natural with no artificial flavorings.

240.    Defendant knew or should have known Teas did not have the quality and ingredients described above because they included artificial citric acid as a flavoring.

241.    The Misrepresentations were likely to deceive or cause misunderstanding and did in fact deceive Plaintiffs and the Minnesota Subclass with respect to the Teas' ingredients' standards, quality, and nature.

242.    Defendant's conduct and Misrepresentations described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

243.    The Misrepresentations were made to customers in Minnesota, including the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Teas contained artificial flavorings.

244.    The facts concealed, omitted, or not fully disclosed by Defendant were material facts in that Plaintiffs, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Teas. Had Plaintiffs

44

and the Minnesota Subclass known the Teas did not have the quality as advertised by Defendant, they would not have purchased the Teas or paid the premium price.

245.    Defendant intended that Plaintiff Rust and the Minnesota Subclass would rely on the deception by purchasing the Teas, unaware of the Misrepresentations and other undisclosed material facts. This conduct constitutes consumer fraud.

246.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

247.    As a direct and proximate result of Defendant's conduct, Plaintiff Rust and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

248.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff Rust and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the FSAA.

### COUNT VIII
**Violations of Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69,
*et. seq.*, Against Defendant on Behalf of the Minnesota Subclass**

249.    Plaintiff Rust incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

250.    The members of the Minnesota Subclass at times relevant hereto were citizens of the State of Minnesota.

251.    Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MPCFA").

252.    The Misrepresentations were made in connection with the sale of the Teas to Plaintiff Rust and the Minnesota Subclass.

253.    Defendant knowingly acted, used, and employed fraud, false pretenses, and deceptive, unfair, and misleading practices in connection with the sale of the Teas. Specifically, Defendant failed to disclose the Teas contained artificial flavorings.

254.    Defendant knew or should have known the Teas did not have the quality reasonable consumers expected because they included undisclosed artificial citric acid as a flavoring that does not conform to the packaging. Defendant intended for Plaintiff Rust and the Minnesota Subclass to rely on the Teas' packaging in deciding whether to purchase the Teas.

255.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Teas' quality and ingredients, and, by extension, the true value of the Tea. Plaintiff Rust and the Minnesota Subclass relied on, and were in fact deceived by, Defendant's Misrepresentations with respect to the Teas' quality and ingredients in deciding to purchase them over competitors' teas.

256.    The facts misrepresented, concealed, or not fully disclosed by Defendant were material facts in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Teas. Had Plaintiff Rust and the Minnesota Subclass known the Teas did not have the quality advertised by Defendant, they would not have purchased the Teas or paid the premium price.

257.    Defendant's Misrepresentations were made to customers in Minnesota, including the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Teas contained artificial flavorings.

258.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

259.    As a direct and proximate result of Defendant's conduct, Plaintiff Rust and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Teas they reasonably believed did not contain artificial flavorings; and/or (2) purchasing Teas they would not have purchased absent Defendant's Misrepresentations.

260.    Separate from, and in addition to, their actual damages, Plaintiff Rust's and the Minnesota Subclass member's expectations were frustrated as result of Defendant's Misrepresentations, and Plaintiff Rust and the Minnesota Subclass did not receive what they expected to receive—that injury constitutes a loss.

261.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff Rust and the Minnesota Subclass seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MPCFA.

### COUNT IX
**Violations of New York's Deceptive Acts and Practices, N.Y. Gen. Bus. Law §349, Against Defendant on Behalf of the New York Subclass**

262.    Plaintiff Hammonds incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

263.    New York General Business Law ("GBL") section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce[.]"

264. In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL section 349.

265. Defendant violated GBL section 349 by deceptively and misleadingly misrepresenting that the Teas contained no artificial flavorings.

266. Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct intentionally marketed that the Teas were of a particular standard, grade, or quality when they in fact contained artificial flavorings.

267. Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct described herein were directed at the consumer public at-large as they repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

268. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff Hammonds, the New York Subclass, and other reasonable consumers did and would have considered them when deciding whether to purchase the Teas. Had Plaintiff Hammonds and members of the New York Subclass known the Teas did not have the quality, ingredients, and standards as advertised by Defendant, and contained artificial flavorings, they would not have purchased the Teas or paid a premium price.

269. Defendant had exclusive and superior knowledge of the information that was material to Plaintiff Hammonds and the New York Subclass that was not reasonably accessible to reasonable consumers. Defendant unfairly and misleadingly misrepresented such material information to consumers.

270. Defendant has engaged and continues to engage in deceptive, unfair, and misleading conduct in violation of GBL section 349.

271.    Defendant intended for Plaintiff Hammonds and the New York Subclass to rely on its Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct regarding the Teas' quality, ingredients, and standards when purchasing the Teas, unaware of the misrepresented material facts.

272.    As a direct and proximate result of Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct, Plaintiff Hammonds and the New York Subclass suffered actual damages by paying a premium price for Teas they reasonably believed did not contain artificial flavorings.

273.    Pursuant to GBL section 349(h), Plaintiff Hammonds, on behalf of herself and the New York Subclass, seeks declaratory relief, full refund, compensatory and punitive damages, actual damages or $50 (whichever is greater), three times the actual damages (up to $1,000) to the extent Defendant is found to have acted willfully or knowingly in violating this statute, and attorneys' fees. Plaintiff Hammonds and the New York Subclass also seek costs to the extent permitted by law.

## COUNT X
**Violations of New York's False Advertising Law, N.Y. Gen. Bus. Law §350, Against Defendant on Behalf of Plaintiffs and the New York Subclass**

274.    Plaintiff Hammonds incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

275.    New York General Business Law ("GBL") section 350 prohibits false advertising in the conduct of any business, trade, or commerce.

276.    Pursuant to GBL section 350-a, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect . . . [considering] representations made by statement, word, design . . . or any

combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations[.]"

277.   Defendant knew or should have known the Teas did not have the quality, ingredients, and standards as described above because they contained artificial citric acid as a flavoring.

278.   Defendant purposely misrepresented and did not fully disclose material facts regarding the presence of artificial flavoring to consumers, such as Plaintiff Hammonds and the New York Subclass.

279.   The facts misrepresented, concealed, or not fully disclosed by Defendant were material facts in that Plaintiff Hammonds, the New York Subclass, and other reasonable consumers would have considered them when deciding whether to purchase the Teas. Had Plaintiff Hammonds and members of the New York Subclass known the Teas did not have the quality, ingredients, and standards as advertised by Defendant and contained artificial flavoring, they would not have paid the price they did.

280.   Defendant's conduct caused Plaintiff Hammonds and the New York Subclass to suffer actual damages when they purchased the Teas that were worth less than the price paid.

281.   As a direct and proximate result of Defendant's Misrepresentations, concealment, and other deceptive, unfair, and misleading conduct, Plaintiff Hammonds and the New York Subclass suffered actual damages by paying a premium price for Teas they reasonably believed did not contain artificial flavoring.

282.   Pursuant to GBL section 350-e, Plaintiff Hammonds, on behalf of herself and the New York Subclass, seeks declaratory relief, full refund, compensatory and

punitive damages, actual damages or $500 (whichever is greater), three times the actual damages (up to $10,000) to the extent Defendant is found to have acted willfully or knowingly in violating this statute, and attorneys' fees. Plaintiff Hammonds and the New York Subclass also seek costs to the extent permitted by law.

### COUNT X
### Violations of California's Consumers Legal Remedies Act, California Civil Code §§1750, et seq., Against Defendant on Behalf of the California Subclass

283.   Plaintiffs Carter, Freeman, and Ventresca incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

284.   Plaintiffs Carter, Freeman, Ventresca, and each California Subclass member is a "consumer," as that term is defined in California Civil Code section 1761(d).

285.   The Teas are "goods," as that term is defined in California Civil Code section 1761(a).

286.   Plaintiffs Carter, Freeman, Ventresca, and each California Subclass member's purchase of Defendant's products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

287.   Defendant's conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

(a)   California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally making the Misrepresentations;

(b)   California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Tea was of a particular standard, quality, or grade, when it was of another;

(c) California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Tea with intent not to sell it as advertised; and

(d) California Civil Code section 1770(a) (16), by representing that the Tea has been supplied in accordance with previous representations when it has not.

288. The Misrepresentations were material as reasonable consumers such as Plaintiffs Carter, Freeman, and Ventresca and the California Subclass would deem that the Tea contained artificial flavoring important in determining whether to purchase the Tea.

289. As a direct and proximate result of these violations, Plaintiffs Carter, Freeman, Ventresca, and the California Subclass have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

290. Defendant was given written notice and demand pursuant to the CLRA by certified letter dated February 10, 2026, for the California Subclass' claims, and Defendant did not provide any response. Accordingly, Plaintiffs and the California Subclass seek economic and equitable relief and restitution herein.

291. In accordance with CLRA §1782(b), Plaintiffs Carter, Freeman, Ventresca, and the California Subclass are entitled, under CLRA §1780, to recover and obtain the following relief for Defendant's violations of CLRA §§1770(a)(5), (7), (9), and (16) for the Omissions: (a) Actual damages under CLRA §1780(a)(1); (b) Restitution of property

52

under CLRA §1780(a)(3); (c) Punitive damages under CLRA §1780(a)(4); and (d) Any other relief the Court deems proper under CLRA §1780(a)(5).

292.    Plaintiffs Carter, Freeman, and Ventresca, on behalf of themselves and the California Subclass, seeks an award of attorneys' fees pursuant to, inter alia, California Civil §1780(e) and California Code of Civil Procedure §1021.5.

### COUNT XI
**Violations of California False Advertising Law, California Business & Professions Code §§17500, *et seq.*, Against Defendant on Behalf of the California Subclass**

293.    Plaintiffs Carter, Freeman, and Ventresca incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

294.    California's False Advertising Law ("FAL") prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

295.    As set forth herein, Defendant's Misrepresentations were false and likely to deceive the public.  Defendant represented that their Teas contained no artificial flavoring.

296.    Defendant failed to fully disclose that the Products contained artificial citric acid as a flavoring.

297.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

298.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

299.    As alleged herein, the advertisements, labelling, policies, acts, and practices of Defendant relating to the Teas misled consumers acting reasonably as to whether the Teas are "NATURALLY FLAVORED."

300.    Plaintiffs Carter, Freeman, and Ventresca suffered injury in fact as a result of Defendant's actions as set forth herein because Plaintiffs purchased the Teas in reliance on Defendant's false and misleading claims that the Teas were "NATURALLY FLAVORED."

301.    Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant advertised the Teas in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from the Teas' labelling.

302.    Defendant profited from the sale of the falsely and deceptively advertised Teas to unaware consumers.

303.    Plaintiffs Carter, Freeman, Ventresca, and the members of the California Subclass are entitled to economic and equitable relief, and restitution in an amount to be determined at trial.

### <u>COUNT XII</u>
**Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *et seq*., Against Defendant on Behalf of the California Subclass**

304.    Plaintiffs Carter, Freeman, and Ventresca incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

305.   The Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

306.   Defendant willfully and knowingly made the Misrepresentations.

307.   As alleged herein, Defendant has advertised the Tea with false or misleading Misrepresentations, such that Defendant's actions violate at least the following laws;

(a)    The CLRA, California Business & Professions Code §§1750, *et seq*.; and

(b)    The False Advertising Law, California Business & Professions Code §§17500, *et seq.*

308.   By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

309.   A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

310.   As set forth herein, Defendant's claim that the Teas are "NATURALLY FLAVORED" is likely to deceive reasonable consumers and the public.

311.   Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is unfair because it:

(a)    was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

(b)  violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

(c)  the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves can reasonably avoid. Specifically, the increase in profits obtained by Defendant through the misleading labelling does not outweigh the harm to the California Subclass who were deceived into purchasing the Teas because consumers believed the Teas were all natural when they were not.

312.  Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Teas to unaware consumers.

313.  Defendant's conduct caused and continues to cause substantial injury to Plaintiffs Carter, Freeman, Ventresca, and the California Subclass.  Plaintiffs Carter, Freeman, and Ventresca have suffered injuries in fact as a result of Defendant's unlawful conduct.

314.  Plaintiffs Carter, Freeman, and Ventresca, on behalf of themselves and the California Subclass, seek an order for the restitution of all monies from the sale of the Teas, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT XIII
### Unjust Enrichment Against Defendant on Behalf of the
### Class or, Alternatively, the State Subclasses

315.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

316.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of the Teas. Defendant knowingly and willingly accepted and enjoyed these benefits.

317.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Teas would not contain artificial flavorings. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

318.    Defendant's acceptance and retention of the benefits of the payments from Plaintiffs and the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

319.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

320.    Plaintiffs and the Class seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment for Plaintiffs and against Defendant as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

B.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the State Subclass laws, plus pre- and post-judgment interest thereon;

C.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

D.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

E.      An order requiring Defendant to pay punitive damages on any count so allowable;

F.      An order awarding attorneys' fees and costs to Plaintiffs and the Classes; and

G.      An order providing for all other relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 26, 2026

By: /s/ Kara A. Elgersma

**Kenneth A. Wexler**
**Kara A. Elgersma**
**Andrew D. Yoder**
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
Email: kaw@wbe-llp.com
        kae@wbe-llp.com
        ay@wbe-llp.com

**Mark R. Miller**
**Julia Ozello**
**Matthew J. Goldstein**
WALLACE MILLER
200 West Madison Street, Suite 3400
Chicago, IL 60606
Telephone: (312) 261 6193
Facsimile: (312) 275 8174
Email: mrm@wallacemiller.com
        jo@wallacemiller.com
        mjg@wallacemiller.com

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Kara A. Elgersma*