**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| MICHELLE CARPENTER, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>CELESTIAL SEASONINGS, INC.,<br><br>  Defendant. | Case No. 1:26-cv-86-CNS-KAS<br><br>The Honorable Charlotte N. Sweeney |

**DEFENDANT CELESTIAL SEASONINGS, INC'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 923-2765
Facsimile: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067
Telephone: (213) 239-2262
Facsimile: (213) 239-5199

Attorneys for Defendant
Celestial Seasonings, Inc.

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

ALLEGATIONS OF THE COMPLAINT ........................................................................... 3

ARGUMENT....................................................................................................................... 5

I.      Plaintiffs Do Not Plausibly Allege That the Citric Acid is "Manufactured."............. 6

II.     Plaintiffs Do Not Plausibly Allege That Manufactured Citric Acid is Artificial. ....... 9

III.    Plaintiffs Do Not Plausibly Allege that the Citric Acid Acts as a "Flavor."............ 12

CONCLUSION ................................................................................................................. 15

Defendant Celestial Seasonings, Inc. moves to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC"), and each cause of action therein, pursuant to Federal Rule of Civil Procedure 12(b)(6) because the FAC fails to state a plausible claim on which relief can be granted.  Celestial Seasonings seeks dismissal with prejudice and without further leave to amend.  The grounds for the motion are set forth below.[1]

### INTRODUCTION

Plaintiffs allege that Celestial Seasonings mislabels several of its teas as "naturally flavored with other natural flavors" and as containing "no artificial flavors," even though they are purportedly "artificially flavored with synthetically-produced citric acid."  FAC ¶¶ 8–10.  To state a claim based on this theory, Plaintiffs must plausibly allege not only that the products contain "manufactured citric acid," but also that the citric acid acts as an "artificial flavor."  Plaintiffs cannot carry this burden for at least three independent reasons:

First, Plaintiffs have not plausibly alleged that the products contain "manufactured citric acid."  As Plaintiffs admit, "[n]aturally occurring citric acid exists in many fruits and vegetables."  FAC ¶ 87.  But while Plaintiffs allege that manufactured citric acid "is used extensively in food manufacturing" (*id.* ¶ 88) and that "over 99 per cent of the world's output of citric acid is produced through artificial means" (*id.* ¶ 95), Plaintiffs plead no facts that substantiate their speculation that Celestial Seasonings uses manufactured citric acid in its teas.  Many courts have dismissed virtually identical lawsuits premised on the inclusion of allegedly "artificial" citric acid where the plaintiffs' allegations failed to "draw

---

[1] The parties met and conferred about this motion on March 25, 2026, but did not reach an agreement that would eliminate the need for this motion.

a connection between the common industry practice and the actual practice" that the defendant uses. *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 19, 2019).[2] This Court should reach the same conclusion.

Second, even if one credited Plaintiffs' conjecture that Celestial Seasonings uses "manufactured citric acid" in its teas, that would not establish that the citric acid is "artificial." The FDA has made clear that citric acid is a "naturally occurring" substance even when it is produced "by the solvent extraction process . . . for the recovery of citric acid from Aspergillus niger fermentation liquor." 21 C.F.R. § 184.1033(a). The USDA has similarly agreed that citric acid produced via "microbial fermentation of carbohydrate substances" is a "nonsynthetic" substance that is permitted in "organic" foods. 7 C.F.R. § 205.605(a)(1). As a result, Plaintiffs' claim that the citric acid in the products is "manufactured" through fermentation does not establish that the citric acid is "artificial."

Moreover, Plaintiffs' allegation that "manufactured citric acid" is synthesized using an "artificial" *process* does not mean that reasonable consumers would regard the resulting *ingredient* as "artificial." Indeed, faced with a virtually identical lawsuit challenging the representation that Snapple was "all natural" because it contained citric acid, another federal court found it implausible that a reasonable consumer would "think that a compound found in nature is artificial" simply because "it is produced in a different way than nature produces it." *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *6 (S.D.N.Y. Mar. 18, 2024). That reasoning applies with equal force here.

---

[2] Unless noted, all citations and internal quotation marks are omitted.

Third, leaving aside their failure to allege that the citric acid is "artificial," Plaintiffs have not alleged that the citric acid provides each product with its "characterizing flavor"— as would be required for the citric acid to be an "artificial flavor." Plaintiffs admit that each tea contains "natural flavor" that provides it with its characterizing flavor. Moreover, Plaintiffs' allegation that the citric acid acts as an "acidulant" (FAC ¶ 103) makes it far more plausible that the citric acid acts as a "flavor enhancer" or a "pH balancer," which are not "flavors" (and are therefore not "artificial flavors") under the FDA regulations.

Absent a plausible allegation that the teas contain "artificial flavor which simulates, resembles, or reinforces the characterizing flavor" of each tea, the FDA regulations expressly permit Celestial Seasonings to label the teas as "naturally flavored with other natural flavors." 21 C.F.R. § 101.22(i)(1)(iii). That statement accurately reflects that each tea "contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles, or reinforces the characterizing flavor." *Id.* Because citric acid does not simulate, resemble, or reinforce each tea's "characterizing flavor," its presence in the tea does not render this statement deceptive.

In short, Plaintiffs have not plausibly alleged that the teas contain "manufactured citric acid," that "manufactured citric acid" is "artificial," or that the citric acid in the teas acts as a "flavor"—all of which are indispensable premises of Plaintiffs' claim that the teas contain "artificial flavor." This Court should dismiss Plaintiffs' lawsuit with prejudice.

## ALLEGATIONS OF THE COMPLAINT

This case concerns five of Celestial Seasonings' herbal teas: (1) Lemon Zinger; (2) Peach + Probiotics; (3) Country Peach Passion; (4) Jammin' Lemon Ginger; and (5)

3

Wild Berry Zinger. *See* FAC ¶ 7. The front label of each product identifies the product's flavor (such as "Wild Berry Zinger") and states that it is "naturally flavored with other natural flavors." *See id.* ¶¶ 8, 63–68. Certain versions of the labeling also include a side panel that states: "We blend our teas from the finest ingredients, with no artificial flavors or colors." *Id.* ¶ 73. Plaintiffs allege that these representations are false because the teas contain "manufactured citric acid," which Plaintiffs characterize as an "artificial flavor."

Although Plaintiffs concede that "[n]aturally occurring citric acid exists in many fruits and vegetables," they allege that "[a]ll of the citric acid that Defendant adds as an ingredient in each of the Teas is synthetically produced." *Id.* ¶¶ 87, 96. According to Plaintiffs, "manufactured citric acid . . . is utilized extensively in food manufacturing," and "over 99 per cent of the world's output of citric acid is procured through artificial means." *Id.* ¶¶ 88, 95. Plaintiffs allege that the "vast majority" of manufactured citric acid "is synthesized using mutant strain of a black mold *Aspergillus niger*," followed by a "solvent extraction process." *Id.* ¶¶ 89–91. Notably, however, the USDA has made clear that citric acid produced via "microbial fermentation of carbohydrate substances," including citric acid produced via *Aspergillus niger* fermentation, is a "nonsynthetic" substance that is permitted in "organic" foods. 7 C.F.R. § 205.605(a)(1).

Plaintiffs also concede that all five of the teas include "natural flavor" that supplies each tea with its characteristic flavor. *See* FAC ¶¶ 81–85. For example, the Lemon Zinger tea includes "Natural Lemon Flavor with Other Natural Flavors," and the Country Peach Passion tea includes "Natural Peach Flavor with other Natural Flavors." *See id.*

4

¶¶ 81, 83.  Plaintiffs nonetheless allege that the citric acid acts as a "flavor" because it "impart[s] a tart, sour and tangy flavor component" in each of the teas.  *Id.* ¶ 104.

Based on the premise that the citric acid is an "artificial flavor," Plaintiffs allege that it is deceptive to label the teas as "naturally flavored with other natural flavors" and to state that they contain "no artificial flavors."  *See id.* ¶¶ 8–10.  Plaintiffs allege that they and other class members were "damaged by paying a price premium" for the teas as a result of these alleged misrepresentations.  *Id.* ¶ 165.  Had they known that the teas contain manufactured citric acid, Plaintiffs claim that they would "not have paid the price premium for the Teas" or would "not have purchased the Teas at any price."  *Id.* ¶ 166.

Plaintiffs assert claims under the consumer protection statutes of Colorado, Illinois, Washington, Minnesota, New York, and California, as well as a claim for unjust enrichment.  *See id.* ¶¶ 156–320.  Plaintiffs assert these claims on behalf of a putative nationwide class, as well as putative subclasses of Colorado, Illinois, Washington, Minnesota, New York, and California consumers.  *See id.* ¶ 144.

## ARGUMENT

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To satisfy this standard, Plaintiffs must plead sufficient facts to "nudge [their] claim . . . across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."  *Id.* at 679 (alteration in original).  And when a plaintiff's

allegations are "as consistent with an obvious alternative explanation" as they are with an "inference of wrongdoing," she has not stated a plausible claim. *In re Overstock Sec. Litig.*, 119 F.4th 787, 806 (10th Cir. 2024); *accord Twombly*, 550 U.S. at 567–68. As explained below, Plaintiffs' allegations fall far short of this standard.

I.    **Plaintiffs Do Not Plausibly Allege That the Citric Acid is "Manufactured."**

Plaintiffs' claims hinge on the premise that Celestial Seasonings' teas contain "manufactured citric acid," which Plaintiffs characterize as a "synthetically-produced" form of citric acid. FAC ¶ 10. Notably, Plaintiffs do not—and cannot—allege any facts about how Celestial Seasonings procures the citric acid that it uses in its teas. Instead, Plaintiffs rely on general allegations that "manufactured citric acid . . . is used extensively in food manufacturing" and that "over 99 per cent of the world's output of citric acid is procured through artificial means." *Id.* ¶¶ 88, 95. But many courts have rejected similar allegations that the citric acid used in all food products is "an industrially produced, synthetic ingredient," and they have agreed that "generalized statement[s] about the production of citric acid [are] not enough to adequately allege that the citric acid used in the Products is industrially produced." *Valencia*, 2024 WL 1158476, at *5 (quoting *Indiviglio v. B&G Foods, Inc.*, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023)) (alterations omitted).

In *Tarzian*, for example, the plaintiffs alleged that the presence of allegedly "artificial" citric acid made it deceptive for the defendant to claim that its Capri Sun juice products contain "no artificial preservatives." 2019 WL 5064732, at *1. While the plaintiffs conceded that citric acid could be naturally "produced by extraction from fresh fruits," they speculated that the defendant used the artificial version because it was more

"economically viable" to do so.  *Id.*  The court dismissed their lawsuit.  Even though the plaintiffs had alleged a "common industry practice" of using artificial "fermented citric acid," the court found that these allegations were "insufficient to link fermented citric acid to that used in Capri Sun," as they failed to "draw a connection between the common industry practice and the *actual practice* used by Kraft."  *Id.* at *4 (emphasis added).

Last month, another federal court applied this reasoning to dismiss a lawsuit alleging that the defendant falsely claimed that its dips were free of artificial flavors, colors, or preservatives, even though they contained allegedly "artificial" citric acid.  *See Vineyard v. La Terra Fina USA, LLC*,  2026 WL 554545 (S.D. Ill. Feb. 27, 2026).  There, as here, the plaintiff alleged that the "citric acid in La Terra's products is derived from a 'commercial, microbial/chemical manufacturing process'" and that "99% of the global production of citric acid occurs through this or similar fermentation processes."  *Id.* at *1– 2.  Because it is "cheaper for food companies to manufacture citric acid than to extract it from fruits directly," the plaintiff alleged that "it is 'highly probable' that La Terra uses manufactured citric acid in its Dips, like 'virtually all' other food companies."  *Id.* at *2.

The court found that these allegations failed to establish a "discernible nexus between the industrial fermenting process she describes *generally* and the citric acid production practices of La Terra."  *Id.* at *4 (emphasis in original).  As the court explained, the plaintiff's "allegations boil down to this: La Terra is a food company; food companies generally use artificial citric acid to save money; therefore, La Terra uses artificial citric acid in the Dips."  *Id.* at *7.  But the court found that these allegations "fail to offer specific facts about La Terra's liability that would be necessary to survive a motion under Rule

7

12(b)(6)."  *Id.*  Because the plaintiff had "done nothing to substantiate her claim that the citric acid used in the Dips is artificial," the court found that she had not plausibly alleged that the presence of citric acid rendered the defendant's labeling deceptive.  *Id.* at *6.

The same is true here.  Plaintiffs rely exclusively on general allegations that citric acid is used "extensively" in the food industry and that "over 99 per cent of the world's output of citric acid is produced through artificial means."  FAC ¶¶ 88, 95.  But those allegations say nothing about how *Celestial Seasonings* procures the citric acid that it uses in its teas.  And as many courts have agreed, a plaintiff cannot rely upon "speculative probabilities derived from the practices of others" to establish that a *specific* defendant's labeling is deceptive.  *Vineyard*, 2026 WL 554545, at *5; *see also, e.g., Tarzian*, 2019 WL 5064732, at *4 (rejecting the plaintiff's "inferential leap" from an alleged "common industry practice"); *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (dismissing common-law fraud claim where the plaintiff relied on "general allegations regarding 'food fraud' and the flavor industry's scheme to use alternatives to natural vanilla" but "fail[ed] to tie these facts to the defendant's conduct or intent in any way").

At most, Plaintiffs' allegations suggest that the citric acid in Celestial Seasonings' teas *might* be produced via microbial fermentation.  But that speculation does not suffice to "nudg[e]" Plaintiffs' allegations "across the line from conceivable to plausible," and it is therefore insufficient to state a claim.  *Iqbal*, 556 U.S. at 683; *see also Pelayo v. Conagra Brands, Inc.*, 2024 WL 3544621, at *1 (N.D. Cal. May 2, 2024) (dismissing lawsuit premised on the alleged presence of citric acid in canned pasta products where the plaintiffs failed to "provide[] enough facts to plausibly allege that the form of citric acid

8

used by Conagra is artificial" and finding the plaintiffs' allegations "wholly conclusory").

That alone requires the dismissal of Plaintiffs' lawsuit.

## II.    <u>Plaintiffs Do Not Plausibly Allege That Manufactured Citric Acid is Artificial.</u>

Even if this Court credited Plaintiffs' speculation that the products contain

"manufactured citric acid" produced via *Aspergillus niger* fermentation, it does not follow

that the resulting citric acid is "artificial"—let alone that reasonable consumers would

regard it as "artificial."  To the contrary, the FDA has described citric acid as a "naturally

occurring constituent of plant and animal tissues," even when it is produced by a "solvent

extraction process . . . for the recovery of citric acid from Aspergillus niger fermentation

liquor."  21 C.F.R. § 184.1033(a).  The USDA has similarly maintained that citric acid

produced through "microbial fermentation of carbohydrate substances"—including

*Aspergillus niger* fermentation—is a "nonsynthetic" substance that is permitted in

"organic" foods.  7 C.F.R. § 205.605(a)(1).  And faced with a similar lawsuit based on the

presence of allegedly "artificial" citric acid, another court dismissed the plaintiff's lawsuit

and noted that "citric acid produced by microbial fermentation of carbohydrate substances

. . . seems like by definition" to be "nonsynthetic" under the USDA regulations.  RJN Ex.

1, at 9–10 (hearing transcript in *Osborne v. Kraft Foods, Inc.* (N.D. Cal.)); RJN Ex. 2 (order

granting motion to dismiss "for the reasons stated on the record at the hearing").

The reasoned judgment of the FDA and the USDA that citric acid made through

microbial fermentation is "naturally occurring" and "nonsynthetic" is fatal to Plaintiffs'

lawsuit.  After all, if an ingredient satisfies the USDA's definition of a "nonsynthetic"

ingredient, such that it is permitted in "organic" food products, it is not remotely plausible

that a reasonable consumer would regard it as "artificial."  *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 507–08 (S.D. Cal. 2013) (noting that "consumers . . . often equate 'natural' with 'organic' or hold 'organic' to a higher standard"); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (similar).

Plaintiffs try to sidestep this result by asserting that manufactured citric acid is an "unnatural" and "highly processed" ingredient.  FAC ¶ 92.  But because "manufactured citric acid" produced via microbial fermentation of sugar or other carbohydrates is still derived from a natural source, it satisfies the FDA's definition of a "natural flavor."  *See* 21 C.F.R. § 101.22(a)(1).[3]  And several courts faced with similar cases have agreed that the fact that an ingredient is "highly processed does not provide a plausible claim of artificiality."  *Jackson v. SFC Global Supply Chain, Inc.*, 2021 WL 3772696, at *2 (S.D. Ill. Aug. 25, 2021); *see also Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021) ("Absent any factually substantiated allegations that the vanillin, malitol, and piperonal in Defendants' product are not derived from natural sources, the Court finds that Plaintiffs have failed to allege the presence of artificial flavors . . . .").

Even if this Court credited Plaintiffs' allegation that the manufacturing process they outline in their complaint is somehow "artificial," that would not salvage their claims.  The

---

[3] Plaintiffs also assert that the "FDA has stated that citric acid is an artificial and synthetic additive in multiple warning letters to the food industry."  FAC ¶ 94.  But the warning letters Plaintiffs attach to the FAC do not explain *why* citric acid is an "artificial" or "synthetic" ingredient.  And faced with similarly unreasoned FDA warning letters, other courts have found that it is "questionable whether those warning letters should be entitled to any deference as a matter of law or logic."  *Kelley v. WWF Operating Co.*, 2017 WL 2445836, at *6 (E.D. Cal. June 6, 2017) (collecting cases).

fact that an ingredient is produced using an allegedly synthetic *process* does not mean that a "reasonable consumer . . . would regard as unnatural" the *ingredients* (such as citric acid) produced using that allegedly "synthetic" process. *Valencia*, 2024 WL 1158476, at *6. For example, "refined cane sugar is highly processed, but no reasonable consumer would consider sugar to be an artificial flavor." *Jackson*, 2021 WL 3772696, at *2.

*Valencia* is directly on point. There, the plaintiff alleged that Snapple mislabeled its beverages as "All Natural," even though they contained allegedly artificial citric acid. *See id.* at *1. Although the plaintiff acknowledged that citric acid occurred in nature, she alleged that the citric acid in Snapple's beverages was "made beginning with fermentation from the *Aspergillus niger* mold" and "recovered through numerous chemical reactions with synthetic mineral salts and reagents." *Id.* at *5. The plaintiff alleged that this process resulted in "an industrially produced, synthetic ingredient" that made it misleading for Snapple to label its beverages as "All Natural." *Id.* The court dismissed her lawsuit.

In reaching that conclusion, the court noted that the plaintiff had not articulated any way "in which the citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits." *Id.* The court found this fact fatal, as "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id.*

Here too, Plaintiffs have not pleaded any facts that suggest that reasonable consumers would view citric acid produced via microbial fermentation as "artificial." Even if this Court credited Plaintiffs' implausible allegation that the method used to create the

11

citic acid in Celestial Seasonings' teas is "artificial," Plaintiffs have pleaded no facts suggesting that the resulting citric acid is different in any meaningful sense from the "natural" version of citric acid. Absent any factual allegations showing that citric acid manufactured via microbial fermentation is "artificial" or that reasonable consumers would regard it as "artificial," Plaintiffs have not stated a plausible claim.

III.    **Plaintiffs Do Not Plausibly Allege that the Citric Acid Acts as a "Flavor."**

For Plaintiffs to state a plausible claim that Celestial Seasonings' teas contain "artificial flavors," they must plausibly allege not only that the citric acid in the products is "artificial," but also that it acts as a "flavor." Plaintiffs have not done so.

To establish that the citric acid in the teas acts as an "artificial flavor," Plaintiffs must plausibly allege that it "simulates, resembles or reinforces the *characterizing flavor*" of the product. 21 C.F.R. § 101.22(i)(1) (emphasis added); *see also id.* § 101.22(i) (noting that the "primary recognizable flavor[]" of the product, as depicted through words or vignettes on the labeling, is its "characterizing flavor"). It is not enough that citric acid may incidentally affect a tea's flavor or "amplify whatever characterizing flavor it has from another source." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013). Rather, to establish that the citric acid acts as an "artificial flavor," Plaintiffs must plausibly allege that it "give[s] the product an *original taste*." *Id.* (emphasis added).

Plaintiffs' challenge to the phrase "naturally flavored with other natural flavor" similarly rises or falls with their allegation that the citric acid acts as an "artificial flavor." After all, if a "food contains no artificial flavor which simulates, resembles, or reinforces the characterizing flavor," and if that "food contains both a characterizing flavor from the

product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor," the FDA regulations require the food to be labeled as "naturally flavored with other natural flavor."  21 C.F.R. § 101.22(i)(1)(iii).  Absent a plausible allegation that each tea contains "artificial flavor" that "simulates, resembles or reinforces the characterizing flavor," the FDA regulations require Celestial Seasonings to state that the teas are "naturally flavored with other natural flavor"—which means that it cannot be deceptive or unlawful to label the teas with this phrase.

Plaintiffs have not plausibly alleged that the citric acid acts as an "artificial flavor." Plaintiffs allege, in conclusory terms, that Celestial Seasonings adds citric acid "in order to impart a tart, sour and tangy flavor component" to its teas and that "[t]he Teas therefore contain artificial flavor."  FAC ¶¶ 104–05.  But if citric acid imparts a "tart," "sour," or "tangy" flavor, it is not plausible that it gives each tea its "characterizing" or "primary recognizable flavor"—such as peach, lemon, or wild berry.  *See id.* ¶¶ 64–68; *see also* 21 C.F.R. § 101.22(i).  Moreover, each tea's ingredient list confirms that it includes natural flavor that gives each tea its characterizing flavor, such as "Natural Peach Flavor with Other Natural Flavors" or "Natural Lemon and Ginger Flavors with Other Natural Flavor."  *See id.* ¶¶ 81–85.  The "obvious alternative explanation" is that the teas derive their "characterizing flavor" from the natural flavor ingredient and that the citric acid does not act as a "flavor," artificial or otherwise.  *See Twombly*, 550 U.S. at 567–68; *Overstock*, 119 F.4th at 806.

Indeed, Plaintiffs' allegation that citric acid is an "acidulant" (FAC ¶ 103) suggests that its function is "pH control," rather than flavoring.  *See generally* 21 C.F.R. § 170.3(o)(23) (defining a "pH control agent" as a "[s]ubstance[] added to change or

13

maintain acidity or basicity"). Indeed, the FDA's website defines "pH Control Agents and acidulants" (including citric acid) as substances that serve to "[c]ontrol acidity and alkalinity" and to "prevent spoilage," rather than "[f]lavors and [s]pices" that serve to "[a]dd specific flavors" to food. RJN Ex. 3. If citric acid acts as a "pH control agent," it is not a "flavor"—and is therefore not an "artificial flavor."

Moreover, even if Plaintiffs were correct that citric acid increases the tartness or sourness of Celestial Seasonings' teas, that would establish only that it "enhances' and "modifies" the *other* characteristic fruit flavor in each flavor of the teas—which makes it a textbook example of a "[f]lavor enhancer." 21 C.F.R. § 170.3(o)(11). And in drawing a distinction between "flavors" and "flavor enhancers," the FDA has made clear that "flavor enhancers are not flavorings" and that they are not subject to the FDA regulations governing the disclosure of natural and artificial flavors. Food Labeling; Declaration of Ingredients, 56 Fed. Reg. 28592, 28598 (June 21, 1991).

Many courts have dismissed similar lawsuits where the plaintiff's allegations did not establish that the challenged ingredient served the function the plaintiff claimed. For example, in *Ivie v. Kraft Foods Global, Inc.*, the plaintiff alleged that Kraft falsely claimed that its products contained "natural flavors," even though they also contained potassium citrate and sodium citrate, which were allegedly "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). The court dismissed this claim. "While these substances may be artificial *ingredients*," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* (emphasis in original). In so holding, the court emphasized that a "bare, conclusory assertion that these two

14

ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor . . . is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)." *Id.* at 1042.

Similarly, in *Hu v. Herr Foods, Inc.*, the plaintiff alleged that the statement "No Preservatives Added" was false because the products contained citric acid, which the plaintiff characterized as a preservative. 251 F. Supp. 3d 813, 816–17 (E.D. Pa. 2017). The court dismissed this lawsuit, holding that the plaintiff had not plausibly alleged that citric acid actually acted as a preservative in the product. *See id.* at 821–22. In reaching this conclusion, the court rejected the plaintiff's argument that reasonable consumers would still view citric acid as a preservative "regardless of its functionality—*i.e.*, even if [it] does not actually preserve that particular product." *Id.* at 821. And while the plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products," the court found that these "arguments and speculations are not supported by well-pleaded factual allegations" and that it "need not accept them as true." *Id.* at 822–23.

Here, as in *Ivie* and *Hu*, Plaintiffs have not plausibly alleged that the citric acid in the teas acts as a *flavor*, as opposed to a flavor enhancer or a pH balancer. Even if Plaintiffs' allegations were sufficient to establish that citric acid *could* act as a "flavor" (which they are not), the "mere possibility" that it functions as a flavor is not enough to state a plausible claim that the teas contain "artificial flavors." *Iqbal*, 556 U.S. at 679. That is a separate and independent reason to dismiss Plaintiffs' lawsuit.

## CONCLUSION

This Court should dismiss Plaintiffs' lawsuit without further leave to amend.

Dated:  March 26, 2026   Respectfully submitted,


By: /s/ Dean N. Panos
  Dean N. Panos
  Jenner & Block LLP
  353 N. Clark Street
  Chicago, IL 60654-3456
  Telephone: (312) 923-2765
  Facsimile:  (312) 527-0484
  dpanos@jenner.com

  Alexander M. Smith
  Jenner & Block LLP
  2029 Century Park East, Ste. 1450
  Los Angeles, CA 90067
  Telephone: (213) 239-2262
  Facsimile: (213) 239-5199
  asmith@jenner.com

  Attorneys for Defendant
  Celestial Seasonings, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on March 26, 2026 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  March 26, 2026                    By: _____/s/ Dean N. Panos_____
                                                              Dean N. Panos

17