**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00086-CNS-KAS

MICHELLE CARPENTER, et al.,

     Plaintiffs,

v.

CELESTIAL SEASONINGS, INC., et al.

     Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT CELESTIAL SEASONINGS, INC'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

---

**Table of Contents**

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.      Plaintiffs Allege that the Citric Acid is Manufactured ............................................. 3

II.     Plaintiffs Allege that the Citric Acid is Artificial....................................................... 6

III.    Plaintiffs Allege that the Citric Acid Functions as Flavoring................................. 12

CONCLUSION ............................................................................................................... 15

i

**Table of Authorities**

**Cases**

*Adams v. Kraft Heinz Co.*,
No. 5:22-CV-290, 2022 WL 18776273 (M.D. Fla. Jan. 9, 2022)...................................6

*Albrigo v. Chobani, LLC*,
No. 3:24-CV-01418, 2025 WL 1930007 (S.D. Cal. July 11, 2025)..............................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................2

*Branca v. Bai*,
2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) .............................................................12

*Bryson v. Gonzales*,
534 F.3d 1282 (10th Cir. 2008)..................................................................................4

*Cabrega v. Campbell Soup Co.*,
No. 18-CV-3827, 2019 WL 13215191 (E.D.N.Y. Nov. 18, 2019) ...............................15

*Clark v. Hershey Co.*,
2019 WL 2288041 (N.D. Cal. May 29, 2019) ............................................................12

*Daly v. FitLife Brands, Inc.*,
No. 1:22-CV-00762, 2023 WL 6388112 (N.D. Ill. Sept. 28, 2023) ............................10

*Francis v. Mead Johnson & Co.*,
No. 1:10-CV-00701-JLK, 2010 WL 5313540 (D. Colo. Dec. 17, 2010) ........................7

*Fried v. Snapple Bev. Corp.*,
735 F. Supp. 3d 1145 (S.D. Cal. 2024)......................................................................9

*Gouwens vs. Target Corp.*,
No. 3:22-cv-50016, 2022 WL 18027524 (N.D. Ill. Dec. 30, 2022) .............................13

*Hayes vs. Kraft Heinz Co.,*
No. 23-cv-16596, 2024 WL 4766319 (N.D. Ill. Nov. 13, 2024) ..................................14

*Hu v. Herr Foods, Inc.*,
251 F. Supp. 3d 813 (E.D. Pa. 2017) .................................................................. 14, 15

*Ivie v. Kraft Foods Global, Inc.*,
961 F. Supp. 2d 1033 (N.D. Cal. 2013) .....................................................................14

*Jou vs. Kimberly-Clark Corp.*,
   No. C-13-03075, 2013 WL  6491158 (N.D. Cal. Dec. 10, 2013)................................. 10

*Kelly v. Beliv LLC*,
   640 F. Supp. 3d 286 (S.D.N.Y. 2022) ............................................................. 15

*Krikorian v. Post Consumer Brands, LLC*,
   No. CV 25-2122, 2026 WL 785726 (C.D. Cal. Mar. 18, 2026)...................................... 5

*Mason v. Reed's Inc.*,
   515 F. Supp. 3d 135 (S.D.N.Y. 2021) ............................................................. 5

*Mason vs. Reed's Inc.*,
   515 F. Supp. 140 (S.D.N.Y. Jan. 28, 2021) ................................................... 10

*Noohi v. Kraft Heinz Co.*,
   No. CV1910658, 2020 WL 5554255 (C.D. Cal. July 20, 2020) .................... 4, 6, 11, 13

*Palmer vs. Coca-Cola Co.*,
   No. CV 25-4777, 2025 U.S. Dist. LEXIS 199686 (C.D. Cal. Oct. 8, 2025)................... 7

*Ringler v. J.M. Smucker Co.,*
   783 F. Supp. 3d 1229 (C.D. Cal. May 13, 2025) ........................................... 9

*Robbins v. Oklahoma*,
   519 F.3d 1242 (10th Cir. 2008)................................................................. 3

*Simeone v. T. Marzetti Co.*,
   No. 21-CV-9111, 2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) ................................. 14

*Slowinski vs. Drip Drop Hydration, Inc.*,
   No. 24 CV 5421, 2025 WL 524118 (N.D. Ill. Feb. 18, 2025)...................................... 15

*Squeo vs. Campbell Soup Co.*,
   No. 24-cv-02235, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024) ................................. 5

*Tapia vs. Coca-Cola Co.*,
   No. 22-cv-01362, 2023 WL 2621346 (N.D. Cal. Mar. 23, 2023)................................ 12

*Tarzian v. Kraft Heinz Foods Co.,*
   No. 18 C 7148, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019) ........................................ 6

*Tatum v. Kraft Heinz Co.,*
   No. 1:23-CV-00073, 2023 WL 5804252, (N.D. Ill. Sept. 7, 2023).............................. 12

*Taylor v. Walmart, Inc.*,
   789 F. Supp. 3d 774 (C.D. Cal. 2025) ................................................................. 5

*Valencia v. Snapple Beverage Corp.*,
  No. 23-CV-1399, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024)....................................8

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) .........................................................................14

*Vineyard v. La Terra Fina USA, LLC*,
  No. 3:24-CV-00704, 2025 WL 958319 (S.D. Ill. Mar. 31, 2025)...................................6

*Watts v. Beiersdorf Inc.*,
  No. 24-CV-00527, 2024 WL 5168765 (E.D.N.Y. Dec. 19, 2024) ................................15

**Rules**

21 C.F.R. §101.22(a)(3)...................................................................................................8

21 C.F.R. §184.1033(a) ...................................................................................................7

## INTRODUCTION

Plaintiffs[1] are consumers of herbal teas marketed and sold throughout the country by Defendant Celestial Seasonings, Inc. ("Defendant"). Defendant promotes itself as "the original herbal tea company," and, from its launch, promised a "movement" to "shift towards healthier, happier little moments carved into ever-busier days." ECF 16 (Amended Class Action Complaint), ¶58.[2] Defendant is committed to quality and sustainability, as evidenced through its promise that its teas are "Blended with Care: From Seed to Sip" and vows that "all" of the raw materials used in the teas are "tested for purity and quality," "cleaned and milled in-house." ¶¶60-61. The principal display panel of each of the Teas[3] pronounces that each Tea is "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS." ¶63. Elsewhere on the packaging, Defendant states "**Quality Ingredients**: We blend our teas from the finest ingredients, with no artificial flavors or colors." ¶72. Reasonable consumers, like Plaintiffs, understand Defendant's representations, at minimum, to mean that the Teas do not contain artificial flavors.

Natural citric acid exists, but food manufacturers almost never use it in their products. ¶¶87-88. They opt, instead, for manufactured citric acid ("MCA"), which is distinct from natural citric acid. ¶88. MCA is synthesized using a solvent extraction process which includes, among other things, the use of synthetic isoparaffinic petroleum hydrocarbons. ¶¶89-92, 96-97. According to the FDA, MCA is not natural and has

---

[1] "Plaintiffs" are Michelle Carpenter, Lori Bernstein, Kandise Bigfeather, Martha Carter, Jaquay Davis, Susan Freeman, Lisa Gibson, Kris Dee Hall, Rebekah Myatt Hammonds, Amber Rust, Nanci Selk, and Patrice Ventresca.
[2] "¶" references are to the Amended Class Action Complaint (ECF 16).
[3] "Teas" refers to Lemon Zinger Herbal Tea, Peach + Probiotics Herbal Tea, Country Peach Passion Herbal Tea, Jammin' Lemon Ginger Herbal Tea, and Wild Berry Zinger Herbal Tea.

specifically warned food manufacturers that advertising products as "100% Natural," "Natural," or containing "Nothing Artificial" is not permitted when the products contain MCA. ¶¶93-94. One of the ingredients Defendant includes in the Teas is "citric acid." ¶¶80-85. The citric acid Defendant adds to the Teas is MCA. ¶¶96-97. Defendant adds MCA to the Teas to impart a tart, sour, and tangy flavor component to the Teas. ¶¶103-4. Separate from "citric acid," the ingredients in the Teas include "Natural [Lemon, Peach, Lemon and Ginger, or Raspberries and Blueberries] with Other Natural Flavors." ¶¶80-85. If the citric acid in the Teas were natural, Defendant would have no need to list it separately as it would be covered by reference to "Other Natural Flavors." ¶¶96-98.

Defendant's representations that the Teas are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" and expressly disclaiming the use of "artificial flavors" are false and misleading to reasonable consumers like Plaintiffs. ¶¶77-79, 101-102. Defendant intentionally marketed and labeled the Teas with these misrepresentations with full knowledge that the Teas are flavored with MCA, not natural citric acid. This information is material to reasonable consumers, including Plaintiffs, when they decide which products to purchase. ¶¶102, 108-122. Defendant's misrepresentations are all the more egregious in light of its overall campaign to portray the company as a purveyor of goods which are "natural," "high-quality," and filled with healthy ingredients "From Seed to Sip." *E.g.,* ¶¶58-61, 124.

### ARGUMENT

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

2

*v. Iqbal*, 556 U.S. 662, 678 (2009); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Seeking to dismiss the Complaint, Defendant argues (1) that Plaintiffs have not pleaded that the citric acid in the Teas is manufactured, (2) that manufactured citric acid is not artificial, and (3) that the citric acid does not act as a flavor. The Complaint cannot be read to support Defendant's arguments. Plaintiffs have alleged facts supporting inferences that Defendant uses MCA as flavoring and that reasonable consumers would be misled by the manner in which Defendant represents the Teas. Plaintiffs have stated claims upon which relief can and should be granted. Defendant Celestial Seasonings, Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Motion to Dismiss" or "Mot.") should be denied.

## I.    Plaintiffs Allege that the Citric Acid is Manufactured

The Complaint alleges, straightforwardly and repeatedly, that the citric acid Defendant puts in the Teas is MCA. ¶¶79, 96, 99, 104, 106, 107, 110, 111, 159, 171, 186, 207, 227, 240, 253, 266, 277, 296. Plaintiffs allege that MCA is used extensively in food manufacturing and that natural citric acid represents less than 1% of the world's citric acid output. ¶¶88, 95. The process to synthesize MCA is complex and quite different from extracting natural citric acid from fruits and vegetables—so different that the FDA has warned food manufacturers that they cannot advertise their products as "all natural" if they contain MCA. ¶¶90-94. Defendant's tea packaging, among other things, unambiguously states that the products are "NATURALLY FLAVORED WITH OTHER NATURAL FLAVORS" and that they contain "no artificial flavors," when, in fact, Defendant adds synthetic citric acid to the teas as an artificial flavor. ¶¶77, 103-105. If the citric acid added by Defendant were natural, Defendant would not have listed as a separate item on the Teas' ingredient lists because it would have fallen within the ambit of "other natural

3

flavors" that appear as ingredients on the Teas' packaging. ¶98. These allegations, among others, taken together create the reasonable inference that links common industry practice to actual practice giving rise to the alleged misconduct.

Defendant's argument that "Plaintiffs Do Not Plausibly Allege That the Citric Acid is 'Manufactured'" (Mot. at 6) ignores Plaintiffs' well-pleaded facts. In addition to those set forth above, Defendant also entirely fails to acknowledge the following allegations:

> 97. Defendant does not add natural citric acid as an ingredient in any of the Teas.

> 99. Because the citric acid that Defendant adds to the Teas is MCA, and not natural citric acid (or an "other natural flavor"), the ingredient panels include citric acid as a separate ingredient presumably to comply with federal law requiring the identification of all ingredients in a product.

> 100. Defendant's separate listing for citric acid on its ingredient list confirms the fact that the citric acid added by Defendant to the Teas is MCA, and not natural citric acid.

¶¶97, 99, 100. These allegations of fact all lead to the plausible conclusion that the citric acid in the herbal teas at issue is, indeed, artificial, and not natural.

Defendant would have Plaintiffs come forward with definitive proof regarding the citric acid in the Teas—at the pleading stage. Of course, that is not the standard. *Noohi v. Kraft Heinz Co.*, No. CV1910658, 2020 WL 5554255, at *3 (C.D. Cal. July 20, 2020) (test results not required for sufficient factual allegations). Plaintiffs need not demonstrate conclusively that the citric acid Defendant uses is MCA, but rather, as Plaintiffs have, present sufficient factual allegations from which the Court may draw inferences that the citric acid is MCA. Plaintiffs have provided more than a sufficient basis for the Court to do so. Defendant's misstatement of the standard required of Plaintiffs at the pleading stage should be rejected. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) ("If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied

4

this requirement. If it omits some necessary facts, however, it may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions.").

In its Motion to Dismiss, Defendant conspicuously fails to acknowledge many cases in which courts have allowed similar manufactured citric acid allegations to proceed at the pleading stage. *Krikorian v. Post Consumer Brands, LLC*, No. CV 25-2122, 2026 WL 785726 (C.D. Cal. Mar. 18, 2026) (denying motion to dismiss for alleged misrepresentations on pet food labeling stating "No Artificial Preservatives" and as "Natural Food" when pet food contained citric acid); *Taylor v. Walmart, Inc.*, 789 F. Supp. 3d 774 (C.D. Cal. 2025) (denying a motion to dismiss for alleged misrepresentations on microwaveable macaroni and cheese labeling stating "No artificial flavors" and "No artificial preservatives" when the food contained citric acid); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135 (S.D.N.Y. 2021) (denying motion to dismiss for alleged misrepresentations on soda labeling stating "All-Natural" and containing "no preservatives" when the soda contained citric acid); *Albrigo v. Chobani, LLC*, No. 3:24-CV-01418, 2025 WL 1930007 (S.D. Cal. July 11, 2025) (denying motion to dismiss for alleged misrepresentations on yogurt labeling stating the product contained "Only Natural Ingredients" when the yogurt contained citric acid.); *Squeo vs. Campbell Soup Co.*, Case No. 24-cv-02235, 2024 WL 4557680, at *4-5 (N.D. Cal. Oct. 22, 2024) (sufficient allegations that citric acid was manufactured, as opposed to naturally produced, based on extensive use in food industry and commercial infeasibility of using natural citric acid).

Many more courts have denied motions to dismiss in similar cases involving directly analogous allegations of the use of manufactured malic acid in food products. *See, e.g.*, *Adams v. Kraft Heinz Co.*, No. 5:22-CV-290, 2022 WL 18776273 (M.D. Fla.

5

Jan. 9, 2022) (denying motion to dismiss when plaintiffs had sufficiently alleged that defendants misled consumers by labeling products as containing "natural flavor with other natural flavor," when they contained artificial malic acid); *Noohi*, 2020 WL 5554255, at *3-5 (denying motion to dismiss when plaintiffs adequately alleged that the malic acid used in Crystal Light acted as a flavoring agent and as artificial.).

Given that over 99% of global citric acid is manufactured (¶89), in conjunction with the impracticalities associated with using natural citric acid for mass-marketed products like the Teas (¶95), the reasonable inference the Court must draw is that Defendant uses MCA in the Teas. Moreover, Defendant has exclusive control over information around its supplier/s of citric acid for the Teas. Plaintiffs have met the plausibility standard under *Twombly* and *Iqbal*. Defendant's authority is distinguishable because the pleadings in those cases were threadbare. In *Tarzian v. Kraft Heinz Foods Co.,* No. 18 C 7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019), the plaintiffs did not draw a connection between the common industry practice and the practice used by defendants. In *Vineyard v. La Terra Fina USA, LLC*, No. 3:24-CV-00704, 2025 WL 958319, at *6 (S.D. Ill. Mar. 31, 2025), the court found that the plaintiffs relied on even less than the industry practice cited in *Tarzian* to suggest the use of artificial citric acid. Here, plaintiffs have provided detailed allegations about industry practices linked to specific representations on the products in question that make the inference about Defendant's use of MCA more than merely possible, but plausible.

## II.     Plaintiffs Allege that the Citric Acid is Artificial

Defendant argues that even if the Teas contain MCA, Plaintiffs have not alleged that it is "artificial," primarily relying on FDA regulations stating that citric acid is "naturally occurring" and "non-synthetic" when produced via microbial fermentation of carbohydrate

6

substances. Mot. at 9. Defendant attempts to isolate its misrepresentations through the lens of regulatory language to argue technical compliance with United States food and drug law, while at the same time ignoring well-pleaded facts regarding the FDA's views specifically as to the artificiality of MCA (¶94). The accuracy of Defendant's hyper-technical points is not particularly at issue in this case, in any event, because Plaintiffs have alleged that the misrepresentations are misleading to reasonable consumers. And that question—whether the alleged misrepresentations have misled reasonable consumers—is a question of fact, not to be adjudicated at the pleading stage. *See, e.g., Francis v. Mead Johnson & Co*., No. 1:10-CV-00701-JLK, 2010 WL 5313540, at \*4 (D. Colo. Dec. 17, 2010) (whether conduct is deceptive or misleading is a question of fact, inappropriate to be decided at the pleadings stage).

Plaintiffs have met their burden. They allege that natural citric acid and MCA are different and both exist (¶¶87-88); they allege that MCA is extracted using a chemical process which results in an end product containing chemical solvent residue (¶¶88-92); they allege that MCA is used extensively in the food industry and that 99% of all citric acid is MCA (¶¶88, 95). Plaintiffs also allege that Defendant uses MCA in the Teas (*e.g.,* ¶¶96-97). Taken together, Plaintiffs' allegations lead to the reasonable inference that the MCA used by Defendant in the Teas is "artificial." *See, e.g., Palmer vs. Coca-Cola Co*., No. CV 25-4777, 2025 U.S. Dist. LEXIS 199686, at \* 28 (C.D. Cal. Oct. 8, 2025) (finding that the questions of citric acid being a flavor and artificial "is a factual issue not properly resolved at the motion to dismiss stage.")**.**

Defendant glosses over the reasonable consumer standard, directing the Court to the definition of citric acid appearing in the Code of Federal Regulations, which includes

citric acid from "sources such as lemon or pineapple juice," by "mycological fermentation using Candida spp.," and by the "solvent extraction process" for "recovery from *Aspergillus niger.*" Mot. at 9, citing 21 C.F.R. §184.1033(a). This regulatory definition has nothing to do with reasonable consumers. Defendant's reference to regulations relating to whether products can be labeled as "organic" when they contain "nonorganic" substances like citric acid produced by microbial fermentation is equally irrelevant. Plaintiffs have made no allegations about "organic" labels. Rather, Plaintiffs detail the particular process by which MCA is made, including the use of "highly processed glucose from corn syrup derived from corn, with less from beet sugar, cane molasses, and fruit waste," which is then subject to a "solvent extraction process for citric acid [that] uses chemical solvents (noctyl alcohol and synthetic isoparaffinic petroleum hydrocarbons) to extract the citric acid from the *Aspergillus niger* fermentation liquor… [The] residue of the chemical solvents remains in 'finished' MCA." ¶¶90-92.[4]

Even assuming the regulatory particulars are relevant to a consideration of what reasonable consumers understand, Defendant cherry-picking a definition here and a label statement there does not lead to the conclusion that MCA could be considered a "natural flavor" as set forth in 21 C.F.R. § 101.22(a)(3). That section provides that "natural flavors include the natural essence or extractives obtained from <u>plants</u> listed in … part 184 of this chapter," referring to naturally occurring substances such as the citric acid inherently

---

[4] These allegations, among others, distinguish Plaintiffs' complaint from the one dismissed in *Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399, 2024 WL 1158476, at *6 (S.D.N.Y. Mar. 18, 2024). In *Valencia*, in considering whether a more general "All Natural" claim on juice was problematic when it allegedly contained MCA, the court specifically noted that the plaintiff had failed to allege that MCA contains synthetic solvents. *Id.*

present in lemons or pineapples—*not* citric acid from industrial fermentation or chemical processing. 21 C.F.R. §101.22(a)(3) (emphasis supplied). *Aspergillus niger* is not a plant, nor does Defendant claim it is.

Defendant similarly ignores cases in which courts have denied motions to dismiss in cases alleging that MCA is artificial. In *Fried v. Snapple Bev. Corp.*, for instance, the plaintiff alleged that MCA, not from fruit or vegetables, but chemically derived from the mold, was in each of the products at issue, leading the court to conclude that "[t]hese are factual allegations that, at this stage, the Court is required to accept." 753 F. Supp. 3d 1145, 1152 (S.D. Cal. 2024). Similarly, in *Ringler v. J.M. Smucker Co.* the court denied dismissal when the complaint alleged that the defendant "use[d] artificially manufactured citric acid[,]…using a black mold called *Aspergillus niger*[,]" described the process by which MCA is produced, cited "numerous academic articles regarding citric acid[,]" and "ultimately allege[d] that it 'is not commercially feasible to use natural citric acid extracted from fruits[.]'" 783 F. Supp. 3d 1229, 1238 (C.D. Cal. May 13, 2025). Here, Plaintiffs allege the Teas contain MCA, describe the process by which MCA is produced, allege that such a process is overwhelmingly used in the industry, and cite to academic articles regarding MCA to support their allegations. ¶¶88-89 n.8-9, ¶95 n.12.

Defendant's argument that the Complaint contains insufficient allegations from which the Court may infer that "reasonable consumers would view citric acid via microbial fermentation" (Mot. at 11-12) as artificial strains credulity. Plaintiffs must (and do) allege that reasonable consumers, viewing the Teas' labels in context, would be misled if they discovered that an included ingredient was produced through industrial fermentation and synthetic solvent extraction. For example, Plaintiffs allege that "[r]easonable consumers

9

must and do rely on Defendant to honestly report what its Teas contain," particularly in light of "the overall campaign by Defendant to advertise and market the Teas as made with natural, high-quality, healthy ingredients…to induce consumers, such as Plaintiffs, to purchase the Teas." ¶¶118-127. Each Plaintiff alleges that she was unaware that the Teas were flavored with MCA. ¶¶18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 51. And even if Defendant's contention that MCA is somehow also "natural, despite the fact that it is not natural citric acid, which cannot be determined at this juncture, "a statement that is literally true can still be misleading." *Daly v. FitLife Brands, Inc.*, 1:22-CV-00762, 2023 WL 6388112, at *7 (N.D. Ill. Sept. 28, 2023). The question is whether reasonable consumers would view MCA as contrary to the representations Defendant makes on the Teas' packaging—Defendant's argument "is at odds with basic logic…and appears in conflict with the holdings of many other courts…." *Jou vs. Kimberly-Clark Corp*., No. C-13-03075, 2013 WL 6491158, at *6-9 (N.D. Cal. Dec. 10, 2013) (finding that consumers can easily be misled by labelling products as "All Natural"). In any event, that question is not to be answered at the pleadings stage. Plaintiffs allege more than sufficient facts from which to draw an inference that they would.

The FDA warning letters treating citric acid as inconsistent with "natural" or "nothing artificial" claims bolster Plaintiffs' allegations as well. ¶93. Contrary to Defendant's assertions, courts have recognized that FDA warning letters can support the plausibility of consumer deception claims. *See, e.g., Mason vs. Reed's Inc*., 515 F. Supp. 140 (S.D.N.Y. Jan. 28, 2021) (finding that FDA warning letters about citric acid rendered the plaintiff's allegations plausible rather than merely possible). Although Plaintiffs do not solely rely on the warning letters, the FDA cautioning companies that "natural" and

10

"nothing artificial" claims are problematic when MCA is present highlights the FDA's concern that consumers, when viewing Defendant's labels, would be misled by the combination of "naturally flavored" and "no artificial flavors" statements when the product contains MCA. ¶93.

Defendant's reliance on a transcript from *Osborne v. Kraft Foods Group, Inc.* (ECF 22-1) is unpersuasive, in part, because it suggests that the complaint at issue lacked allegations which the Complaint in this case contains.[5] Another court has already rejected *Osborne's* application when plaintiffs made allegations similar to those made here:

> [T]he [*Osborne*] complaint did not "specify whether all citric acid is unnatural or some types of citric acid is unnatural" or "what type of citric acid Kraft uses in its Capri Sun drinks."…Here, Plaintiffs have explained the two types of malic acid and alleged that the artificial malic acid is used in Crystal Light…Plaintiff has adequately alleged that the malic acid used in Crystal Light is artificial.

*See Noohi,* 2020 WL 5554255, at *3. Here, Plaintiffs allege: (1) the production method (*Aspergillus niger* fermentation with solvent extraction using identified chemical solvents) that results in residual solvents remaining in the final product (¶¶89-91, 96-99); (2) the prevalence of this method (99% of global production) (¶95); (3) an inference from ingredient list structure that manufactured, not natural, citric acid was utilized (¶96); (4) FDA warning letters that MCA is not suitable for "all natural" products (¶93); (5) Defendant's purpose in adding citric acid (¶104); and (6) that Defendant added MCA to the Teas (¶103). These factual allegations, taken together, more than suffice to allow an inference that reasonable consumers would view MCA as artificial.

---

[5] Defendant's request for judicial notice should be denied as set forth in Plaintiffs' separate opposition thereto.

### III. Plaintiffs Allege that the Citric Acid Functions as Flavoring

Plaintiffs allege that Defendant adds MCA to the Teas as a flavor. ¶¶103-107. *See also Tatum v. Kraft Heinz Co.,* No. 1:23-CV-00073, 2023 WL 5804252, (N.D. Ill. Sept. 7, 2023) (holding that plaintiffs plausibly alleged that the malic acid in Crystal Light functions as a flavor and that the "no artificial flavors" statements on the products' labels could be deceptive to a reasonable consumer and denying defendant's motion to dismiss). Defendant largely ignores those allegations and, again makes a regulatory argument that, at the pleading stage, Plaintiffs must allege that the MCA "simulates, resembles or reinforces the characterizing flavor" of the product. Mot. at 12. Defendant misconstrues the requirements and the relevant pleading standards. "Whether a reasonable consumer would be deceived by the label '100% Natural Flavors' turns on the question of whether [the particular ingredient(s) at issue] function[] as [] flavor or flavor enhancer[s]." *Tapia vs. Coca-Cola Co*., Case No. 22-cv-01362, 2023 WL 2621346, at *3-4 (N.D. Cal. Mar. 23, 2023) (citing *Branca v. Bai*, 2019 WL 1082562, at *9 (S.D. Cal. Mar. 7, 2019) ("[i]f it is determined that the Defendants should have disclosed the 'artificial flavor,' then a reasonable consumer would likely be deceived by the Product's packaging [label], which clearly states 'No artificial flavors.'")).

Contrary to Defendant's assertions, Plaintiffs are not required to allege that MCA imparts "original flavor" on the Teas, only that the MCA imparts flavor. Mot. at 12. "An ingredient is classified as an artificial flavor based on its function in a product, not its impact on taste." *Clark v. Hershey Co*., 2019 WL 2288041, at *2 (N.D. Cal. May 29, 2019). Even if the food product does "not have a single primary recognizable flavor, it still must have *a* flavor, sweetness and tartness may very well be those flavors." *Gouwens vs.*

12

*Target Corp.*, No. 3:22-cv-50016, 2022 WL 18027524, at *3 (N.D. Ill. Dec. 30, 2022) (emphasis in original). Furthermore, Defendant's own product labels belie the assertion that it adds citric acid for a reason other than flavor, like as a preservative. Defendant *only* lists citric acid as an ingredient in certain products (the Teas) which benefit from the tart flavor it imparts and does not add it to many other herbal teas it produces and sells. ¶106. Plaintiffs have sufficiently alleged that Defendant adds MCA as a flavor in the Teas. ¶¶64-68, 104, 107.

Defendant next claims that the Complaint fails if the citric acid is a mere "flavor enhancer." This argument is unavailing because it raises, at best, a factual issue. *Noohi* is instructive. *Noohi*, 2020 WL 5554255, at *4. There, the court found that "[t]he FDA regulations acknowledge that malic acid can be used as a flavor enhancer, a flavoring agent and adjuvant, and a pH control agent." *Noohi*, 2020 WL 5554255, at *3. The court concluded that "Plaintiff has adequately alleged that the malic acid used in Crystal Light acts as a flavor, and not just a flavoring agent" because "whether the malic acid in Crystal Light acts as a flavor or flavor enhancer is a factual dispute that cannot be resolved" at the pleading stage. *Id*. at *4. Similar to Plaintiffs here, the *Noohi* plaintiffs alleged "[d]efendants include DL-Malic Acid to help make their products taste tart and fruity." *Id*. at *4 (internal citations omitted). And much like Defendant here, the defendant in *Noohi* argued that the challenged ingredient "enhances and modifies the other characteristic fruit flavors present in each variety of Crystal Light, which makes it a textbook example of flavor enhancer." *Id*. Here, like in *Noohi*, Plaintiffs allege that the MCA imparts flavor to the Teas, meaning that those ingredients are present in those products as flavors, not

13

flavor enhancers. MCA is alleged to provide the Teas with a "tart, sour and tangy flavor" and to "add flavor" to the Teas. ¶¶104, 107.[6]

Defendant's reliance on *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033 (N.D. Cal. 2013) and *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) is misplaced. The arguments considered in *Ivie* were based on preemption and standing (arguments not raised here) and the only "flavor" label involved said "natural lemon flavor" without additional representations that the product contained no artificial flavors. *Ivie*, 961. F. Supp. 2d at 1041. In *Hu*, the plaintiff asserted that a claim of "No Preservatives" was misleading because the products contained citric acid, which *can* act as a preservative, but the complaint did not allege that the citric acid *was added* to preserve the products. *Hu*, 251 F. Supp. 3d at 822. Plaintiffs' Complaint here contains allegations which render the conclusions reached in *Ivie* and *Hu* inapposite.

Plaintiffs allege that the citric acid at issue is added for flavor and that is all that is required at the pleading stage. *See* ¶¶104, 107. Courts have declined to follow *Hu* and *Ivie* when plaintiffs have asserted similar allegations to those found in the Complaint. *See, e.g., Hayes vs. Kraft Heinz Co.,* No. 23-cv-16596,  2024 WL 4766319, at *4 (N.D. Ill. Nov. 13, 2024) ("The reasons for dismissal in *Hu* and *Ivie* are not present here. Plaintiffs allege specifically that citric acid sodium phosphates function as preservatives in the Products"); *Simeone v. T. Marzetti Co.*, No. 21-CV-9111, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) (allegations that citric acid served as a preservative because they "stabilize the [products'] active ingredients" sufficient); *Cabrega v. Campbell Soup Co.*, No. 18-CV-

---

[6] *Viggiano v. Hansen Natural Corp.,* 944 F. Supp. 2d 877 (C.D. Cal. 2013), is distinguishable in that the plaintiff there appeared to concede that the ingredients were "synthetic flavor enhancers." *Id.* at 882.

14

3827, 2019 WL 13215191, at *10 (E.D.N.Y. Nov. 18, 2019) (distinguishing *Hu* because complaint alleged that citric acid acted as a preservative, not just that it could); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 298 (S.D.N.Y. 2022) (finding *Hu's* reasoning "unpersuasive"); *Slowinski vs. Drip Drop Hydration, Inc.*, No. 24 CV 5421, 2025 WL 524118, at *4 (N.D. Ill. Feb. 18, 2025) (unpersuaded by *Hu*); *Watts v. Beiersdorf Inc.*, No. 24-CV-00527, 2024 WL 5168765, at *5 (E.D.N.Y. Dec. 19, 2024) (allegations sufficient that ingredient was a preservative).

Not only have Plaintiffs provided multiple authorities that MCA is a flavor, including warning letters from the FDA and academic articles stating the same (¶¶88-95, n. 9), but Plaintiffs specifically allege that the citric acid here is a flavor: (1) Defendant purposely added citric acid to impart tart, sour, and tangy flavor (¶104); (2) the sensory characteristics that citric acid contributes (tartness, sourness, and tanginess); (3) how these characteristics relate to the product's characterizing flavors (lemon, peach, berry); and (4) comparing the Teas to Defendant's other products, illustrating that Defendant does not uniformly add citric acid across its herbal tea line, which would suggest some other purpose (¶102). These allegations go well beyond bare, conclusory assertions; they provide factual context and reasoning supporting the plausible inference that citric acid functions as a flavor.

## CONCLUSION

For all of the forgoing reasons, the Court should hold that Plaintiffs have stated claims for relief upon which relief may be granted and deny Defendant's Motion to Dismiss.

April 16, 2026                                   Respectfully submitted,

                                                 /s/ *Kara A. Elgersma*

15

Kenneth A. Wexler
Kara A. Elgersma
Andrew Yoder
**Wexler Boley & Elgersma LLP**
311 South Wacker Drive
Suite 5450
Chicago, Illinois 60606
(312) 346-2222
kaw@wbe-llp.com
kae@wbe-llp.com
ay@wbe-llp.com


Mark R. Miller
Matthew J. Goldstein
Julia Ozello
**Wallace Miller**
200 West Madison Street
Suite 3400
Chicago, IL 60606
(312) 261-6193
mrm@wallacemiller.com
mjg@wallacemiller.com
jo@wallacemiller.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Counsel of Record.


*s/ Kara A. Elgersma*

17