# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

MICHELLE CARPENTER, et al.,

        Plaintiffs,

        v.

CELESTIAL SEASONINGS, INC.,

        Defendant.

Case No. 1:26-cv-86-CNS-KAS

The Honorable Charlotte N. Sweeney

## CELESTIAL SEASONINGS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 923-2765
Facsimile: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067
Telephone: (213) 239-2262
Facsimile: (213) 239-5199

Attorneys for Defendant
Celestial Seasonings, Inc.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT.......................................................................................................................... 2

I.      Plaintiffs Do Not Plausibly Allege That the Citric Acid Acts as a "Flavor." ............. 2

II.     Plaintiffs Have Not Plausibly Alleged That the Citric Acid Is "Manufactured." ....... 6

III.    Plaintiffs Do Not Plausibly Allege That Manufactured Citric Acid is Artificial. ........ 8

CONCLUSION .................................................................................................................... 10

i

## __INTRODUCTION__

The crux of this lawsuit is that the presence of allegedly "manufactured" citric acid in five Celestial Seasonings teas makes it deceptive to state that those teas are "naturally flavored with other natural flavors" or that they contain "no artificial flavors." For Plaintiffs to state a claim based on this theory, they must plausibly allege not only that the citric acid is "artificial," but also that it acts as an "flavor." Plaintiffs fall short on both fronts.

Even assuming for argument's sake that the citric acid in the teas is "artificial," the labeling does not claim that the teas are "all natural" or that they are free of "artificial" ingredients. Instead, it states that the teas are free of "artificial flavors"—*i.e.*, substances that "simulate[], resemble[] or reinforce[] the *characterizing* flavor" of the food. 21 C.F.R. § 101.22(i)(2) (emphasis added).[1] Despite Plaintiffs' insistence to the contrary, the fact that citric acid might incidentally affect the taste of the teas does not make it an "artificial flavor," which means it is not misleading to claim that the teas contain "no artificial flavors." And because each tea contains natural flavor that provides its characterizing flavor, it is also not deceptive to state that the teas contain "natural flavor with other natural flavors."

Leaving aside the absence of any plausible allegation that the citric acid in the teas acts as an "artificial flavor," Plaintiffs' lawsuit also fails because they have not plausibly alleged that the citric acid in the teas is "manufactured" or "artificial." Plaintiffs' allegation that many food manufacturers use "manufactured" citric acid does not make it plausible that Celestial Seasonings does so. And even if it did, Plaintiffs' claim that "manufactured" citric acid is "artificial" defies the FDA's view that citric acid is a "naturally occurring"

---

[1] Unless noted, all citations and internal quotation marks are omitted.

substance even when it is produced "by the solvent extraction process . . . for the recovery of citric acid from Aspergillus niger fermentation liquor."  21 C.F.R. § 184.1033(a). Plaintiffs characterize this as a "hyper-technical point[]" that does not bear on the views of reasonable consumers.  Opp'n at 7.  But even if this were correct (which it is not), Plaintiffs have also not plausibly alleged that a reasonable consumer would view citric acid as "artificial" if it is otherwise identical to a substance that occurs in nature.

This Court should dismiss Plaintiff's lawsuit without further leave to amend.

## ARGUMENT

I.    **Plaintiffs Do Not Plausibly Allege That the Citric Acid Acts as a "Flavor."**

It is beyond dispute that all five teas at issue contain natural flavor that provides each tea with its characterizing flavor, such as "Natural Peach Flavor with Other Natural Flavors" or "Natural Lemon and Ginger Flavors with Other Natural Flavor."  FAC ¶¶ 81–85.  Plaintiffs nonetheless allege that the citric acid in the teas functions as an "artificial flavor" because it "impart[s] a tart, sour and tangy flavor component" to the teas.  *Id.* ¶¶ 104–05.  But that is not sufficient to allege that the citric acid provides each tea with its "characterizing flavor" or "primary recognizable flavor."  *See* 21 C.F.R. § 101.22(i)(1); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) (noting that an "artificial flavor" must "give the product an original taste").  That is fatal to Plaintiffs' entire lawsuit.  After all, if the citric acid is not an "artificial flavor," Plaintiffs cannot plausibly allege that the phrase "No Artificial Flavors" is deceptive or misleading.

Plaintiffs assert that they need not "allege that MCA [manufactured citric acid] imparts 'original flavor' on the teas, only that the MCA imparts flavor."  Opp'n at 12.  But

2

that argument ignores the text of the FDA regulations, which require manufacturers to disclose the presence of "artificial flavor" only if the product contains a substance that "simulates, resembles, or reinforces the *characterizing flavor*" of each tea. 21 C.F.R. § 101.22(i)(1) (emphasis added).[2] Plaintiffs' cited cases do not hold otherwise.

For example, in *Clark v. Hershey Co.*, the court recognized that "[a]n ingredient is classified as an artificial flavor based on its function" and that an ingredient's "impact on taste" does not make it an "artificial flavor." 2019 WL 2288041, at *2 (N.D. Cal. May 29, 2019). The same is true of *Tapia v. Coca-Cola Co.*, where the court acknowledged that the plaintiff's lawsuit "turn[ed] on the question of whether malic acid functions as a flavor or a flavor enhancer." 2023 WL 2621346, at *3 (N.D. Cal. Mar. 23, 2023). And while Plaintiffs cite *Gouwens v. Target Corp.* to argue that an "artificial flavor" need not provide the product with its "primary recognizable flavor" (Opp'n at 12–13), they fail to mention that the *Gouwens* court was discussing "fruit punch"—which, unlike the teas at issue here, has "no primary recognizable flavor."[3] 2022 WL 18027524, at *3 (N.D. Ill. Dec. 30, 2022);

---

[2] Plaintiffs also reference "warning letters from the FDA" and "academic articles" that have allegedly concluded that "MCA is a flavor." Opp'n at 15 (citing FAC ¶¶ 88–95 & n.9). But the allegations Plaintiffs cite relate only to the question of whether manufactured citric acid is "artificial." Even if those allegations were sufficient to establish that the citric acid is "artificial," which they are not, they say nothing about whether it functions as a "flavor."

[3] Indeed, Plaintiffs' reliance on *Gouwens* is particularly inapt because the *Gouwens* court *granted* Target's motion to dismiss and found that the phrase "Natural Flavor With Other Natural Flavors" did not "amount to an affirmative representation that the Product is free from artificial flavors." 2022 WL 18027524, at *3. Other courts have reached the same conclusion. *See, e.g.*, *Boss v. Kraft Heinz Co.*, 690 F. Supp. 3d 912, 914–15 (N.D. Ill. 2023); *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 165–66 (D.N.J. 2025).

*see* 21 C.F.R. § 101.22(i)(3)(iii).   None of these cases even *suggest* that an ingredient is an "artificial flavor" simply because it has some incidental effect on a product's taste.

Plaintiffs then argue that they have plausibly alleged that the citric acid acts as an "artificial flavor" because Celestial Seasonings only adds citric acid to certain teas that "benefit from the tart flavor it imparts."  Opp'n at 13.  But even if one credits that allegation, it does not follow that the citric acid provides each tea with its "characterizing" or "primary recognizable flavor."  To the contrary, each of the teas has a distinct characterizing flavor, like peach or wild berry.  *See* FAC ¶ 7.  And Plaintiffs do not allege that citric acid tastes like peaches or berries—let alone like *all* of the teas' characterizing fruit flavors.

Even if Plaintiffs were correct that citric acid "enhances" and "modifies" the characterizing fruit flavors of each tea, that would simply make it a "flavor enhancer," rather than an "artificial flavor."  21 C.F.R. § 170.3(o)(11).   That would not be enough to state a claim because "flavor enhancers are not flavorings."  Food Labeling; Declaration of Ingredients, 56 Fed. Reg. 28592, 28598 (June 21, 1991).  And Plaintiffs' allegation that the citric acid acts as an "acidulant" (FAC ¶ 103) suggests that its function is "pH control," rather than flavoring.  *See* 21 C.F.R. § 170.3(o)(23) (defining a "pH control agent" as a "[s]ubstance[] added to change or maintain active acidity or basicity"); RJN Ex. 3 (distinguishing "pH Control Agents" from "[f]lavors and [s]pices" that serve to "[a]dd specific flavors to food").  Far from establishing that the citric acid acts as an "artificial flavor," these allegations provide "obvious alternative explanation[s]" that render Plaintiffs' claims implausible.  *In re Overstock Sec. Litig.*, 119 F. 4th 787, 806 (10th Cir. 2024).

4

Relying primarily on *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255 (C.D. Cal. July 20, 2020), Plaintiffs argue that the Court cannot determine at the pleading stage whether the citric acid functions as a "flavor" in the teas. *See* Opp'n at 13–14. But *Noohi* is distinguishable because the plaintiffs alleged that the malic acid in the defendant's products "resemble[d] the natural characterizing fruity flavors" of those products. 2020 WL 5554255, at *4. And to the extent Plaintiffs read *Noohi* to hold that they must allege only that it is *possible* that the citric acid acts as a flavor, that flips the pleading standard on its head. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (noting that plaintiffs must plead facts that "nudge[] their claim[s] . . . across the line from conceivable to plausible").

Indeed, other courts have dismissed similar lawsuits premised on the presence of allegedly "artificial" ingredients when the plaintiffs' allegations did not make it plausible that the challenged ingredients served the function that the plaintiffs claimed. *See, e.g.*, *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013) (dismissing lawsuit alleging that potassium citrate and sodium citrate acted as "artificial flavors" where the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise" (emphasis in original); *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821–23 (E.D. Pa. 2017) (dismissing lawsuit challenging "No Added Preservatives" claim where the plaintiffs did not plausibly allege that the citric acid in the product acted as a preservative). Plaintiffs assert that "[c]ourts have declined to follow *Hu* and *Ivie* when plaintiffs have asserted similar allegations" (Opp'n at 14), but they make no effort to articulate the reasoning of those cases. And while Plaintiffs try to distinguish *Hu* and *Ivie* based on the specific labeling claims at issue (*see id.* at 6), those distinctions miss the

5

point. In both cases, the plaintiffs alleged that the labeling was false *because* a specific ingredient served a specific function. In both cases, the courts dismissed the plaintiffs' claims because their allegations did not establish that the ingredient at issue served the function the plaintiffs claimed. Here too, Plaintiffs' failure to plead facts substantiating their allegation that the citric acid acts as a "flavor" is fatal to their entire lawsuit.

## II.     Plaintiffs Have Not Plausibly Alleged That the Citric Acid Is "Manufactured."

Leaving aside the absence of any plausible allegation that the citric acid functions as a "flavor," Plaintiffs' lawsuit also fails because they have not plausibly alleged that the teas contain "manufactured" or "synthetically-produced" citric acid. FAC ¶ 10. Plaintiffs fall back on their allegation that "MCA is used extensively in food manufacturing and that natural citric acid reflects less than 1% of the world's citric acid output." Opp'n at 3. But many courts have rejected similar allegations that the citric acid used in all food products is "an industrially produced, synthetic ingredient," and they have found that "generalized statement[s] about the production of citric acid" insufficient "to adequately allege that the citric acid used in the Products is industrially produced." *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024); *see also* MTD at 6–8.

Plaintiffs argue that they need not provide "definitive proof" that the citric acid is manufactured "at the pleading stage." Opp'n at 4. But while Plaintiffs need not offer "proof" that the citric acid is "manufactured" to state a claim, they must plead facts that make it *plausible*—and not simply *possible*—that the citric acid in the products is "manufactured." *See Iqbal*, 556 U.S. at 678–79. And even if other manufacturers use "manufactured" citric acid in their products, many courts have agreed that a plaintiff

cannot rely upon "speculative probabilities derived from the practices of others" to establish that a *specific* defendant uses "manufactured" citric acid in its products. *Vineyard v. La Terra Fina USA, LLC*, 2026 WL 554545, at *5 (S.D. Ill. Feb. 27, 2026); *see also Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) (rejecting the plaintiff's "inferential leap" from a "common industry practice" of using "manufactured" citric acid).[4] Here too, Plaintiffs' general allegations that citric acid is used "extensively" in the food industry and that "over 99 per cent of the world's output of citric acid is produced through artificial means" (FAC ¶¶ 88, 95) are insufficient to establish that a specific defendant—Celestial Seasonings—uses "manufactured" citric acid in its teas.

Plaintiffs' counterarguments are unavailing. They first argue that "[i]f the citric acid added by Defendant were natural, Defendant would not have listed [it] as a separate item on the Teas' ingredient lists because it would have fallen within the ambit of 'other natural flavors' that appear as ingredients on the Teas' packaging." Opp'n at 3–4. This argument reflects a fundamental misunderstanding of the FDA regulations. If the citric acid were a "flavor" (which it is not), the FDA regulations would have required Celestial Seasonings to declare the flavor in the ingredient list as "natural flavor." *See* 21 C.F.R. § 101.22(h)(1) ("Spice, natural flavor, and artificial flavor may be declared as 'spice,' 'natural flavor,' or

---

[4] Plaintiffs try to distinguish *Vineyard* and *Tarzian* by arguing that "the pleadings in those cases were threadbare." Opp'n at 6. But the pleadings in those cases were threadbare *because* they relied solely on general allegations about "common industry practice," rather than defendant-specific allegations. *Tarzian*, 2019 WL 5064732, at *4; *see also Vineyard*, 2026 WL 554545, at *1–2 (alleging that the citric acid was "derived from a 'commercial, microbial/chemical manufacturing process'" and that "99% of the global production of citric acid occurs through this or similar fermentation processes").

'artificial flavor,' or any combination thereof, as the case may be."). But because the citric acid is *not* a flavor, the FDA regulations require Celestial Seasonings to list it in the ingredient list by its "common or usual name." 21 C.F.R. § 101.4(a)(1). The fact that Celestial Seasonings identifies citric acid as a separate ingredient in the ingredient list confirms that it is not a "flavor"—and is therefore not an "artificial flavor."

Plaintiffs then accuse Celestial Seasonings of "fail[ing] to acknowledge many cases in which courts have allowed similar manufactured citric acid allegations to proceed at the pleading stage." Opp'n at 5. But none of these cases are binding on this Court, and Plaintiffs make no effort to explain why they are more persuasive than *Vineyard*, *Tarzian*, and their progeny. And while Plaintiffs assert that Celestial Seasonings "has exclusive control over information around its supplier/s of citric acid for the Teas" (*id.* at 6), that does not authorize Plaintiffs to sue first and ask questions later. *See Iqbal*, 556 U.S. at 678–79 (noting that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Plaintiffs' failure to plead facts that support their hunch that Celestial Seasonings uses manufactured citric acid is fatal to their lawsuit.

## III.    <u>Plaintiffs Do Not Plausibly Allege That Manufactured Citric Acid is Artificial.</u>

Finally, even if this Court credited Plaintiffs' speculation that the products contain "manufactured citric acid" produced via *Aspergillus niger* fermentation, that alone would not establish that the resulting citric acid is "artificial" or that reasonable consumers regard it as "artificial." After all, the FDA has described citric acid as a "naturally occurring constituent of plant and animal tissues," even when it is produced by a "solvent extraction process . . . for the recovery of citric acid from Aspergillus niger fermentation liquor." 21

C.F.R. § 184.1033(a).[5]   The USDA has similarly maintained that citric acid produced through "microbial fermentation of carbohydrate substances"—such as *Aspergillus niger* fermentation—is a "nonsynthetic" substance, which is why the USDA permits its use in "organic" foods.  7 C.F.R. § 205.605(a)(1).  Those statements make it implausible that a reasonable consumer would regard "manufactured" citric acid as "artificial."

Plaintiffs respond by citing "FDA warning letters treating citric acid as inconsistent with 'natural' or 'nothing artificial' claims."  Opp'n at 10; *see also* FAC ¶ 94.  But even if other courts have credited these warning letters, Plaintiffs do not even *attempt* to explain how these warning letters are consistent with FDA regulations defining citric acid as a "naturally occurring" substance, even when it is produced via microbial fermentation.  *See* 21 C.F.R. § 184.1033(a).  And other courts faced with similarly unreasoned FDA warning letters have found that it is "questionable whether those warning letters should be entitled to any deference as a matter of law or logic."  *Kelley v. WWF Operating Co.*, 2017 WL 2445836, at *6 (E.D. Cal. June 6, 2017) (collecting cases).

Plaintiffs then assert that the views of the FDA and the USDA may not reflect the views of reasonable consumers.  *See* Opp'n at 6–8.  But it strains credulity that the views of two agencies responsible for regulating food labeling would not reflect the views of reasonable consumers.  That is why several courts have dismissed lawsuits challenging

---

[5] Plaintiffs argue that citric acid produced through *Aspergillus niger* fermentation would not satisfy the FDA's definition of a "natural flavor" because "*Aspergillus niger* is not a plant."  Opp'n at 8–9.  But the FDA's definition of "natural flavor" includes "fermentation products" of plant-based materials, which would include citric acid produced through *Aspergillus niger* fermentation of plant-based ingredients.  21 C.F.R. § 101.22(a)(3).

9

the labeling of products as "natural" when they contain ingredients that the USDA permits in "organic" food products. *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 507–08 (S.D. Cal. 2013); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017). Plaintiffs argue that these cases are inapposite because they "have made no allegations about 'organic' labels." Opp'n at 8. But Plaintiffs miss the point: because "consumers . . . often equate 'natural' with 'organic' or hold 'organic' to a higher standard," it is not plausible that a reasonable consumer would view an ingredient as "artificial" if the USDA expressly permits its use in "organic" products. *Astiana*, 291 F.R.D. at 507–08.

Even if the views of the USDA and the FDA were not determinative of reasonable consumer expectations, Plaintiffs' claims would still fail because they do not (and cannot) allege that "manufactured" citric acid is chemically different from naturally-occurring citric acid. It is therefore implausible that a reasonable consumer would "think that a compound found in nature is artificial" just because "it is produced in a different way than nature produces it." *Valencia*, 2024 WL 1158476, at *6. Plaintiffs try to distinguish *Valencia* by noting that they allege that manufactured citric acid contains synthetic solvents. *See* Opp'n at 8 n.4. But even if Plaintiffs are correct that manufacturers use solvents to purify citric acid, what matters is that the citric acid is "derived from natural sources." *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021). Whether or not this Court credits the views of the FDA and USDA, Plaintiffs have not plausibly alleged that reasonable consumers would regard the citric acid in the teas as "artificial."

## CONCLUSION

This Court should dismiss Plaintiffs' lawsuit without further leave to amend.

10

Dated:  April 30, 2026                          Respectfully submitted,


By: /s/ Dean N. Panos
    Dean N. Panos
    Jenner & Block LLP
    353 N. Clark Street
    Chicago, IL 60654-3456
    Telephone: (312) 923-2765
    Facsimile:  (312) 527-0484
    dpanos@jenner.com

    Alexander M. Smith
    Jenner & Block LLP
    2029 Century Park East, Ste. 1450
    Los Angeles, CA 90067
    Telephone: (213) 239-2262
    Facsimile: (213) 239-5199
    asmith@jenner.com

    Attorneys for Defendant
    Celestial Seasonings, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on April 30, 2026 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  April 30, 2026                    By: _____ /s/ Dean N. Panos _____
                                                      Dean N. Panos